904 P.2d 932

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Edwin FIGEL, Defendant–Appellant.**

**No. 17922.**

Supreme Court of Hawai'i.

Oct. 24, 1995.

George Parker, III, on the briefs, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Edwin Figel was convicted of 1) Driving After License Suspended or Revoked for Driving Under the Influence of Intoxicating Liquor in violation of Hawai'i Revised Statutes (HRS) § 291–4.5 (Supp.1992), and 2) Duty Upon Striking Unattended Vehicle or Other Property in violation of HRS § 291C–15 (1985).[1]  On appeal, Figel contends that

---

1.  HRS § 291–4.5(a) provides in pertinent part:

No person whose driver's license has been revoked, suspended, or otherwise restricted pursuant to part XIV of chapter 286 or section 291–4 shall operate a motor vehicle either upon the *highways* of this State while the person's license remains suspended or revoked or

the district court erred in denying his motion for judgment of acquittal (MJOA) because the prosecution failed to prove that he operated a motor vehicle upon the highways of the state. We agree.

## I. *BACKGROUND*

During a bench trial before the district court, the following testimony and evidence was adduced. On September 27, 1993, Wayne Torikawa saw Figel hit another car while driving his white van in the parking lot of the Oasis nightclub.[2] After Torikawa informed Figel that he had hit the car, Figel told Torikawa, in a "threatening" manner, not to say anything. At the time, Figel's driver's license was suspended for driving under the influence of intoxicating liquor (DUI). After Figel moved to another area of the parking lot, Torikawa went into the nightclub and told a bartender what he had seen.

Honolulu Police Department (HPD) Officer Shayne Sesoko arrived on the scene some time later, but could not locate Figel. After Officer Sesoko relayed a suspect description and car license number to HPD dispatch, Officer Lester Hite went to Figel's house. Figel acknowledged that he owned the van, but stated that he "doesn't drive" and did not know who had been driving the van at the time of the accident. Figel told Officer Hite that he had the keys to the van, but would not tell him who had given him the keys.

After the prosecution presented the foregoing evidence and rested its case, Figel moved for judgment of acquittal arguing that the prosecution failed to prove that the Oasis parking lot was an area encompassed by the definition of "highways" under HRS chapter 291 (Supp.1992).[3] The district court denied Figel's motion, indicating that the "ways" through the Oasis parking lot are "ways or lanes" within the meaning of HRS § 291–1, *see supra* note 3, and, further, that the legislature created this provision to allow for convictions under HRS § 291–4.5(a). *See supra* note 1.

## II. *DISCUSSION*

Figel claims that there is nothing to indicate that the legislature intended that the term "way" in HRS § 291–1 apply to a private parking lot for the purposes of HRS § 291–4.5(a). We agree.

The legislative history of HRS § 291–1 clearly indicates that the statute was designed to increase the number of locations where open containers of alcohol would be prohibited under HRS § 291–3.3 (Supp. 1992).[4] *See* Sen.Stand.Comm.Rep. No. 629–

---

in violation of the restrictions placed on the person's license.
(Emphasis added.) Figel does not challenge his conviction of HRS § 291C–15 on appeal.

**2.** Although the prosecutor's answering brief suggests that "Torikawa saw [Figel] drive *into* the parking lot in a white van" (emphasis added), the transcript merely reveals that Torikawa saw "him in a white van that kind of tried to park next to me." No one testified that Figel operated his vehicle outside the Oasis parking lot. In any event, the prosecution's argument at trial focused on Figel's act of driving within the Oasis parking lot.

**3.** HRS § 291–1 (Supp.1992) provides:

"Public street, road, or highway" includes the entire width, including beam and shoulder, of every road, alley, street, *way, lane,* trail, highway, bikeway, bridge, *when any part thereof is open for use by the public,* including any bicycle lane, bicycle path, bikeway, controlled access highway, laned roadway, roadway, or street, as defined in section 291C–1, and any public highway, as defined in section 264–1.

(Emphasis added.) This definition was added in 1986. *See* 1986 Haw.Sess.L. Act 171, § 2 at 306–07.

Figel also contended that the prosecution had failed to establish that he was the same person in the certified court abstract whose driver's license was suspended for driving under the influence of intoxicating liquor. Although Figel implicitly waived this issue on appeal, we nevertheless hold that there is sufficient evidence in the record to support the conclusion that it was Figel whose driver's license was suspended for DUI.

**4.** HRS § 291–3.3 provides in pertinent part:
**Storage of opened container containing intoxicating liquor or consumption at scenic lookout.** (a) No person shall keep in a motor vehicle, or on a moped when such vehicle or moped is upon any *public street, road, or highway* or at any scenic lookout, any bottle, can, or other receptacle containing any intoxicating liquor which has been opened, or a seal broken, or the contents of which have been partially removed or fully removed, unless such container is kept in the trunk of the vehicle, or kept in some other area of the vehicle not normally occupied by the driver or passengers,

86, in 1986 Senate Journal, at 1065–66 ("The purpose of this bill is to increase the number of locations where open containers of alcohol in motor vehicles would be prohibited ... includ[ing] scenic lookouts, trails, alleys, bridges, bikeways, and *areas of a highway not in the flow of traffic*.") (emphasis added); Hse.Stand.Comm.Rep. No. 286–86, in 1986 House Journal, at 1120 ("The purpose of this bill is to extend the definition of 'public street, road, or highway' *as used in section 291–3.3*, HRS.") (emphasis added). HRS § 291–4.5, on the other hand, applies on the "highways of this State"; this statute does not utilize the phrase "public street, road, or highway."

At best, it is unclear whether the term "highways" in HRS § 291–4.5 incorporates the amended definition of "public street, road, or highway" as set forth in HRS § 291–1. The legislature could have easily used the complete phrase when it enacted HRS § 291–4.5 in 1985 and, thereby, subjected that provision to the broad definition adopted the following year in HRS § 291–1. However, it did not do so.

Even if the definition of "public street, road, or highway" in HRS § 291–1 applies to HRS § 291–4.5, it is clear that the legislature did not intend to criminalize driving with a license suspended for DUI on private property open for use by the public. The definition of "public street, road, or highway" refers to HRS §§ 264–1 and 291C–1.[5] There is no evidence in the record to establish that the Oasis nightclub parking lot is a "highway," rather than a "private road," because the prosecution did not show that this area is "publicly maintained." Significantly, the legislature excluded "private road or driveway" from the definition provided in HRS § 291–1.

If, as the district court painstakingly concluded, the legislature had intended to prohibit a person from operating a vehicle *anywhere*, even on private property, with a license suspended for DUI, the statute could have simply stated that "it is unlawful to operate a vehicle while license suspended for DUI." *See, e.g.*, HRS § 286–122(c) (1985) ("Any resident or nonresident whose driver's license or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this chapter *shall not operate*

---

if the vehicle is not equipped with a trunk. A utility or glove compartment shall be deemed to be within the area occupied by the driver and passengers.
(Emphasis added.) This provision was enacted in 1981 along with other provisions concerning the consumption or possession of intoxicating liquor by an operator or passenger in a motor vehicle. *See* 1981 Haw.Sess.L. Act 152, at 314–15.

5. HRS § 264–1 (1985) provides in pertinent part:

**Public highways, defined, etc.** All roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or built by the State or any political subdivision thereof, are declared to be public highways. Public highways are of two types:
(1) State or federal-aid highways, which are those under the jurisdiction of the department of transportation; and
(2) County highways, which are all other public highways.
All roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or *built by private parties and dedicated or surrendered to the public use*, are declared to be public highways. Dedication of public highways shall be by deed of conveyance.... Surrender of public highways shall be deemed to have taken place if *no act of ownership by*

the owner of the road, alley, street, bikeway, way, lane, trail, or bridge has been exercised for five years *and* when, in the case of a county highway, in addition thereto, *the legislative body of the county has, thereafter, by a resolution, adopted the same as a county highway.*
(Emphases added.) HRS § 291C–1 (1985) provides in pertinent part:
"Alley" means a street or highway intended to provide access to the rear or side of lots or buildings and not intended for the purpose of through vehicular traffic.
. . . .
"Highway" means the entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for the purposes of vehicular travel.
. . . .
"Private road or driveway" means every *way or place in private ownership* and used by the owner and those having express or implied permission from the owner, but not by other persons.
. . . .
"Street" means the entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for the purposes of vehicular travel.
(Emphases added.)

*a motor vehicle in the State* ... until a new license is obtained when and as permitted under this chapter."). HRS § 291–4.5 would then clearly conform to statutes with universally restrictive language such as HRS § 286–102 (Supp.1992)[6] and HRS § 291–4 (Supp.1992).[7]

Although it appears anomalous to criminalize the operation of a vehicle without a license, or while DUI, without regard to the term "highway"—*see State v. Watson,* 71 Haw. 258, 787 P.2d 691 (1990) (holding that nothing in HRS § 291–4(a)(1) requires that the proscribed operation of a vehicle while under the influence of intoxicating liquor be performed on a public highway)—while prohibiting driving with a license suspended for DUI only when it occurs on a "highway," we are nevertheless constrained to give effect to the limiting term "highway" as set forth in HRS § 291–4.5, which is a penal statute. *State v. Gaylord,* 78 Hawai'i 127, 138, 890 P.2d 1167, 1178 (1995) ("penal statutes are to be strictly construed"). We can find no relevant legislative history that demonstrates a contrary intent. *Id.* at 139, 890 P.2d at 1179.

Accordingly, we hold that there is insufficient evidence in the record to establish that Figel operated a vehicle on a highway of this state; therefore, the district court should have granted Figel's MJOA regarding the charge of driving after license suspended or revoked for DUI under HRS § 291–4.5(a). If the legislature had intended that a person who operates a motor vehicle *anywhere* with a license suspended for DUI should be subject to the criminal penalties of HRS § 291–4.5, then the statute should have eliminated the limiting term "highway" from its proscription. Because the legislature included this term, we can only conclude that the operation of a vehicle other than on a "highway" by a person whose license has been suspended for DUI is not illegal under the statute.[8]

## III. *CONCLUSION*

For the foregoing reasons we reverse Figel's conviction of violating HRS § 291–4.5, affirm his conviction of violating HRS § 291C–15, and remand for further proceedings consistent with this opinion.

RAMIL, Justice, dissenting.

Because I believe that the Oasis nightclub parking lot is encompassed within the terms "highways of this State," as the term "highway" is defined in the general provision of Hawai'i Revised Statutes (HRS) § 291–1 (1993), I would affirm Defendant Figel's conviction of Driving After License Suspended or Revoked for Driving Under the Influence of Intoxicating Liquor in violation of HRS § 291–4.5 (1993). Accordingly, I respectfully dissent.

---

6. HRS § 286–102 provides in pertinent part:

   **Licensing.** (a) No person, except one exempted under section 286–105, one who holds an instruction permit under section 286–110, *one who holds a commercial driver's license issued under section 286–239,* or a commercial driver's license instruction permit under section 286–236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

7. At the time of Figel's conviction, HRS § 291–4 provided in pertinent part:

   (a) A person commits the offense of driving under the influence of intoxicating liquor if:
   (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in

an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
   (2) The person operates or assumes actual physical control of the operation of any vehicle with .10 per cent or more, by weight of alcohol in the person's blood.
   *See* Act 226, § 9 (July 29, 1995) (amending HRS § 291–4(a)(2) in a manner not relevant to the instant appeal).

8. Under the peculiar facts of this case, the district court did not base its decision on Figel's possible operation of his vehicle other than in the Oasis parking lot. *See supra* note 2. Because of the court's reliance on Figel's driving in one of the "lanes" or "ways" between vehicles parked in the lot, we limit our consideration of the interpretation of HRS § 291–4.5(a) to the facts relied upon by the district court as the basis for its legal conclusion that Figel violated the statute by operating his vehicle *only* in the Oasis nightclub parking lot.

Defendant Figel was convicted with driving his vehicle in the parking lot of the Oasis nightclub after his license was suspended for driving under the influence of intoxicating liquor (DUI). Defendant Figel does not contest that he was driving his vehicle while his license was suspended. Rather, "Figel claims that there is nothing to indicate that the legislature intended that the term 'way' in HRS § 291–1 apply to a private parking lot for the purposes of HRS § 291–4.5(a)." Majority Opinion at ——, 904 P.2d at 937.

## I.

HRS § 291–4.5 (1993) provides in pertinent part:

> **Driving after license suspended or revoked for driving under the influence of intoxicating liquor; penalties.** (a) No person whose driver's license has been revoked, suspended, or otherwise restricted pursuant to part XIV of chapter 286 or section 291–4 shall operate a motor vehicle either upon the *highways of this State* while the person's license remains suspended or revoked or in violation of the restrictions placed on the person's license. The period of suspension or revocation shall commence upon the release of the person from the period of imprisonment imposed pursuant to this section.

(Emphasis added.)

Specifically, Defendant Figel argues that his conviction should be reversed because he was not driving on a "highway" and therefore not subject to the sanctions of HRS § 291–4.5. HRS § 291–1 (1993) defines "[p]ublic street, road, or highway" *to include:*

> the entire width, including beam, and shoulder, of every road, alley, street, way, lane, trail, highway, bikeway, bridge, *when any part thereof is open for use by the public, including* any bicycle lane, bicycle path bikeway, controlled access highway, laned roadway, roadway, or street, as defined in section 291C–1, and any public highway, as defined in section 264–1.

(Emphasis added.)

Interpreting this statute, this court "construe[s] penal statutes narrowly, [and] consider[s] them in the light of precedent, legis-lative history and common sense." *State v. Gaylord,* 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995).

In order to ascertain the intention of the legislature when it enacted this statute, we look to the legislative history of the statute. The legislative history of HRS § 291–4.5 has been previously examined by this court in *State v. Wilson,* 75 Haw. 68, 856 P.2d 1240 (1993), where it is noted that the purpose of HRS § 291–4.5 is to provide mandatory penalties, including mandatory terms of imprisonment for those who continued to drive after their license has been suspended or revoked for DUI. *See* Sen.Stand.Comm.Rep. No. 904, in 1985 Senate Journal, at 1294.

As noted in *Wilson, supra,* the legislature found that "the penalty of suspension or revocation of a license to be an effective deterrent to drunk driving." 75 Haw. at 75, 856 P.2d at 1244. " '[T]o strengthen the deterrent effect,' the legislature believed that 'stronger sanctions [were] necessary to assure that drivers whose licenses have been suspended or revoked will be kept off our *streets and highways.* '" Sen. Stand.Comm.Rep. No. 904, in 1985 Senate Journal, at 1294; *Wilson,* 75 Haw. at 75, 856 P.2d at 1244 (brackets in original and emphasis added). Thus, the legislative history indicates that the intent of the legislature was to keep these drivers, *i.e.,* those convicted of DUI, off the streets and highways of this State for a specified time period. In other words, the legislative intent of HRS § 291–4.5 is to prohibit recently convicted DUI drivers from posing a risk to the general public.

Defendant Figel contends that HRS § 291–4.5 does not prohibit him from driving on private property that is open to the public. However, it would be absurd to impute to the legislature the intent to limit the protection of HRS § 291–4.5 to "highways" only and leave the general public unprotected in the roads and streets of this State, public or private, that are open for use by the general public. *See Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 68–69, 868 P.2d 1193, 1215–16 (1994) (Klein, J., dissenting) ("Thus, the plain language rule of statutory construction[ ] does not preclude an examina-

tion of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute." (Citations omitted.)), *reconsideration denied,* 76 Hawai'i 46, 868 P.2d 1193 (1994). Indeed, the legislature expressly clarified its intent when it added, to serve as a general provision in part I of chapter 291, the definition section, *i.e.,* HRS § 291–1.[1] HRS § 291–1 specifically provides that highway *includes* those prescribed areas which are open to the public.[2] In the case at hand, the Oasis nightclub parking lot was such a "way" which was open to the public and, thus, an area where the defendant was prohibited from driving.[3]

## II.

The defined terms, "public street, road, *or* highway," are contained in the general provision section and is used in part I of chapter 291. HRS § 291–1 states that its definitions are to be applied and "used in this part" of the chapter. An inspection of HRS chapter 291 reveals that HRS § 291–4.5 is contained in part I of the chapter, and therefore the general provisions of HRS § 291–1 apply to HRS § 291–4.5.

A maxim of statutory construction is that "[t]he fundamental starting point [for the interpretation of a statute] is the language of the statute itself." *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 633, 851

P.2d 321, 328 (1993) (citation and internal quotation marks omitted). Because HRS § 291–1 provides a definitional provision for the entire part I of chapter 291, in my view, the definition of HRS § 291–1 applies to HRS § 291–4.5, specifically to the term "highways of this State." A review of the legislative history of HRS § 291–4.5, *supra,* reveals that the definition of HRS § 291–1 is consistent with the legislature's intent in enacting HRS § 291–4.5.

## III.

Another factor which indicates that HRS § 291–4.5 was designed to prevent suspended drivers from driving a vehicle is that they are generally required to physically surrender their licenses to the authorities. *See* HRS § 286–122 (1993) (Suspension of license; surrender).

In addition to the language of HRS § 291–4.5 itself, we may consider the effect of other statutes which work in conjunction with HRS § 291–4.5. This court has previously stated that "[l]aws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (emphasis added) (citing HRS § 1–16 (1985) and *Kam v. Noh,* 70 Haw. 321, 325, 770 P.2d 414, 417 (1989)), *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994). Another principle of statutory construction which this court has enunciated, is that

[w]e have rejected an approach to statutory construction which limits us to the

---

1. Consistent with our position is the fact that HRS § 291–11.6 (Mandatory use of seat belts) uses the term "highway" and states that "no person ... [s]hall operate a motor vehicle upon any public highway unless the person is restrained by a seat belt...." We find it difficult to interpret this statute such that seat belts would not be required while driving on private land which is open for public use. The intention of the legislature was to provide protection for the general public when operating a motor vehicle, regardless of whether it is on public or private land. It is in this same vein of reasoning that we have interpreted HRS § 291–4.5 to apply to public land as well as to private land which is open

for public use. *See also* HRS § 291–11.5 (1985), relating to "child passenger restraints."

2. HRS § 291–1 also expressly includes "publicly maintained" ways "as defined in section 291C–1, and any public highway, as defined in section 264–1." *See,* Majority Opinion at ——–——, 904 P.2d at 934–935.

3. An inspection of the record reveals that there was sufficient evidence presented in this case to establish that the Oasis nightclub parking lot was "open for the public use" and thus encompassed under the term "highway" as provided in HRS § 291–1.

words of a statute ... for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination.

*Treloar v. Swinerton & Walberg Co.*, 65 Haw. 415, 421, 653 P.2d 420, 424 (1982).

Using these two principles of statutory construction, we look at the interaction of HRS § 291–4.5 in conjunction with HRS § 286–122, which requires persons suspended from driving to physically surrender their driver's licenses to the authorities. HRS § 286–122 provides in relevant part:

(a) Every person whose license or driving privilege has been suspended pursuant to this part or any traffic law or regulation of the State or any county, shall surrender the person's license to the examiner of drivers or the court, as is appropriate, which agency shall take custody of the license during the period of suspension.

. . . .

(c) Any resident or nonresident whose driver's license or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this chapter *shall not operate a motor vehicle in the State* ....

(Emphasis added.)

In effect, HRS § 291–4.5 sets out the penalties for driving with a suspended license, and HRS § 286–122 sets out the requirement that those who have been suspended from driving are required to surrender their licenses. The legal effect of the surrender of a driver's license is that the person is prohibited from driving. With this in mind, it is clear that the legislative intent of HRS § 291–4.5 is to prevent the suspended driver from driving anywhere, be it on public land or private land open to the public.[4] This result is consistent with the legislature's concern for public safety of convicted DUI drivers and their presence in a vehicle on the highway.

## IV.

The majority itself concludes that it "appears anomalous to criminalize the operation of a vehicle without a license, or while DUI, without regard to the term 'highway' ... while prohibiting driving with a license suspended for DUI only when it occurs on a 'highway.'" Majority Opinion at ——, 904 P.2d at 935 (citation omitted). Similarly, I also find this result to be absurd and inconsistent with the policies of HRS chapter 291.

Therefore, I would affirm Figel's conviction because: (1) the clear intent of HRS §§ 291–4.5 and 291–1 is to prohibit a suspended driver from driving on any land that is open for use by the public, be it public or private land; (2) a license suspension is a punishment for derelict drivers; and (3) public safety concerns contemplate the protection of the public from convicted DUI drivers. For these reasons, I respectfully dissent.

---

4. HRS § 286–2 provides a definition of the word "operate," which appears in HRS § 291–4.5. HRS § 286–2 defines "[d]rive" to mean "to drive, or be in physical control of a motor vehicle *in any place open to the general public* for purposes of vehicular traffic." (Emphasis added).

The statute at issue, HRS § 291–4.5 states that "[n]o person whose driver's license has been ... suspended ... shall *operate* a motor vehicle upon the highways of this State...." (Emphasis added).

Employing the doctrine of *in pari materia*, I construe these statutes together and conclude that anyone subject to the provisions of HRS § 291–4.5 is also prohibited from driving in any area which is open to the general public, as provided in HRS § 286–2. This interpretation is consistent with my interpretation of HRS § 291–4.5, as well as the definition of "public street, road, or highway" as provided in HRS § 291–1.