14 P.3d 364

STATE of Hawai'i, Plaintiff–Appellant,

v.

Guy K. KELEKOLIO, Defendant–
Appellee.

No. 22289.

Intermediate Court of Appeals of Hawai'i.

Nov. 29, 2000.

Bryant Zane, Deputy Prosecuting Attorney, County of Kauai, on the briefs, for plaintiff-appellant.

Cody Minatodani, Deputy Public Defender, State of Hawai'i, on the briefs, for defendant-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

The primary issue[1] in this appeal is whether the District Court of the Fifth Circuit (the district court) correctly ruled that Defendant Appellee Guy K. Kelekolio (Kelekolio) could not be convicted of operating a vehicle without a license, in violation of Hawai'i Revised Statutes (HRS) § 286–102 (1993 & Supp.1998), because he was operating the vehicle in the parking lot of a private hotel, rather than on a public highway.

1. Defendant–Appellee Guy K. Kelekolio (Kelekolio) contends that Plaintiff–Appellant State of Hawai'i (the State) had no right to appeal the Findings of Fact, Conclusions of Law, and Order of Dismissal entered by the District Court of the Fifth Circuit (the district court) on January 20, 1999 (the January 20, 1999 Order) because (1) pursuant to Hawai'i Revised Statutes (HRS) § 641–13 (1993), the State is authorized to appeal "[f]rom an order ... dismissing the case where the defendant has not been put in jeopardy"; (2) he had already been put in jeopardy when the January 20, 1999 Order was entered in this case; and (3) the January 20, 1999 Order amounted, in substance, to an acquittal, since the district court's order was based on stipulated facts as to all the elements charged.

Since the district court's ruling was based purely on a question of law, however, and the Hawai'i Supreme Court held in *State v. Wells*, 78 Hawai'i 373, 377–78, 894 P.2d 70, 74–75 (1995), that based on the clear language and purpose of HRS § 641–13, the State is not precluded from appealing orders of dismissal based on pure questions of law, we conclude that Kelekolio's jurisdictional argument is without merit.

We conclude that the district court was wrong in its ruling. Accordingly, we vacate the Findings of Fact, Conclusions of Law, and Order of Dismissal entered by the district court on January 20, 1999 (the January 20, 1999 Order) and remand for further proceedings.

## BACKGROUND

On September 25, 1998, at 12:40 p.m., Kelekolio was cited by a Kauai police officer for operating a motor vehicle around the parking lot of the Kauai Lagoons Hotel without a valid motor vehicle driver's license, in violation of HRS § 286-102. The citing officer observed in his written report of the incident that Kelekolio "only had a drivers [sic] permit and did not have another person in the vehicle with him."

At a "stipulated facts" trial held on December 18, 1998, the parties did not dispute that the Kauai Lagoons Hotel parking lot is private property and that Kelekolio did not have a driver's license when he was cited for operating a motor vehicle without a valid driver's license. In light of these undisputed facts, however, Kelekolio argued that he should be acquitted because HRS § 286-102 was not applicable to the operation of motor vehicles on private property. The district court agreed with Kelekolio's argument and ordered that the case against Kelekolio be dismissed.

Subsequently, the district court entered the January 20, 1999 Order from which the State now appeals, dismissing the charge against Kelekolio on the basis that "HRS § 286-102 does not apply to the operation of a motor vehicle on private property[.]" In so ruling, the district court entered the following conclusions of law:

1. [HRS c]hapter 286 relates to "**Highway Safety**" and generally deals with *highway safety* as it relate[d] to the regulation of motor vehicles and those who operate them.

2. HRS § 286-2 defines "Highway" as follows:

"Highway" means the entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel.

3. HRS § 286-2 defines "Motor Vehicle" as follows:

"Motor vehicle" means every vehicle which is self-propelled and every vehicle which is propelled by electric power but which is not operated upon rails, but excludes a moped.

4. HRS § 286-2 defines "Vehicle" as follows:

"Vehicle" means every device in, upon, or by which any person or property is or may be transported or drawn *upon a highway*, but excludes devices moved by human power or devices used exclusively upon stationary rails or tracks and mopeds.

5. If HRS § 286-102 applied to the operation of motor vehicles upon private premises every self-propelled lawn mower, golf cart and other similar appliance would be subject to licensing and other requirements, i.e., safety inspections and registrations. It does not appear that such broad, sweeping application was intended.

6. The intent of the licensing provision which states that "no person ... shall operate any category of *motor vehicles*" without being first examined and licensed must be gleaned from the nature of the chapter and the definition of motor vehicle.

7. The intent of Chapter 286 is to foster *highway safety* by regulating the machines that operate upon the highway and by licensing the drivers of those machines upon the highway. The following sections of Chapter 286 should be read in *para [sic] materia:*

(a) HRS § 286-110(c) provides for persons to receive an instruction permit "to drive *upon the highways*" for 90 days.

(b) HRS § 286-121 provides that the "privilege of driving a motor vehicle *on the highway of this State*" given to a nonresident is subject to suspension or revocation the same as a driver's license issued under Chapter 286.

(c) HRS § 286-132 imposes a penalty upon any person who "drives any motor

vehicle *upon the highways of this State*" while his license is suspended or revoked.

(d) HRS § 286–133 prohibits permitting unlicensed persons to drive *"upon any highway*"[.]

(e) HRS § 286–151 provides that persons operating motor vehicles *"on the public highways of this State*" are deemed to have given consent to be tested for intoxication.

8. In *State v. French*, 77 Hawai'i 222 [883 P.2d 644] (1994) the defendant was convicted of driving without a license in violation of HRS § 286–102. He claimed to be a member of the Kingdom of Hawaii and therefore not subjected to Hawaii's traffic laws. Rejecting his claim the Hawaii Supreme Court declared:

> "The state's requirements that all persons who operate motor vehicles *on state highways* possess a valid driver's license [and] safety inspection tags ... are valid exercises of the state's police power [and] are rationally related to the state's purpose in safeguarding the health and safety of its citizens, and the means employed by the state are rationally related to the purpose of the statutes." (Page 232 [883 P.2d at 654], emphasis added.)

9. *State v. Figel*, 80 Hawai'i 47 [904 P.2d 932] (1995) held:

> A parking lot is not a "highway" under a statute that prohibits driving a motor vehicle upon highways of the state after a license has been suspended or revoked.

10. Although HRS § 286–102 does not contain the word "highway", there are numerous references to driving upon the highway in Chapter 286, "HIGHWAY SAFETY".

11. *State v. Watson*, 71 Haw. 258 [787 P.2d 691 (1990)] is not dispositive because that case dealt with a Chapter 291 violation (DUI). Chapter 291 relates to "Traffic Violations". The Supreme Court found nothing in HRS § 291–4 which required that driving while intoxicated must be done on a public highway to be punishable. It further declared that "..... the strong public policy against the operation of a vehicle while under the influence of intoxi-

cating liquor is sufficient to extend the prohibition of the statute..... " There is no such strong public policy involving the operation of vehicles upon private property.

(Ellipses and emphases in original.) This appeal by Plaintiff Appellant State of Hawai'i (the State) asks us to review the correctness of the district court's construction of HRS § 286–102.

## STANDARDS OF REVIEW

■ The interpretation of a statute is a question of law that we review *de novo*. *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86, *reconsideration denied* (1999). Similarly, a trial court's conclusions of law are reviewable *de novo* under the right/wrong standard. *State v. Lopez*, 78 Hawai'i 433, 440, 896 P.2d 889, 896 (1995). Under the *de novo* standard, this court must examine the facts and answer the pertinent question of law without being required to give any weight or deference to the trial court's answer to the question. *Id.* In other words, we are free to review a trial court's conclusion of law for its correctness. *Id.*

## DISCUSSION

In interpreting HRS § 286–102, we are guided by several basic principles of statutory construction:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be

compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997) (block quote formatting, brackets, citations, and quotation marks omitted).

Applying the foregoing principles, we conclude that the district court was wrong when it limited the applicability of HRS § 286–102 to persons operating motor vehicles on public highways.

### A.

█ Since the starting point for statutory interpretation is the language of the statute itself, we begin our analysis by examining the language of the applicable statutes.

HRS § 286–102, the statute at issue in this case, states, in relevant part, as follows:

**Licensing.** (a) *No person*, except one exempted under section 286–105, one who holds an instruction permit under section 286–110, one who holds a commercial driver's license issued under section 286–239, or a commercial driver's license instruction permit issued under section 286–236, *shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed*

**2.** HRS § 286–108 (Supp.1999) provides, in relevant part:

**Examination of applicants.** (a) Except as provided in section 286–107.5(a), the examiner of drivers shall examine every applicant for a driver's license.... The examination shall include a test of:

(1) The applicant's eyesight and any further physical examination as the examiner of drivers finds necessary to determine the *applicant's fitness to operate a motor vehicle safely upon the highways;*

(2) The applicant's *ability to understand highway signs* regulating, warning, and directing traffic;

(3) The applicant's *knowledge of* the rules of the road based on the *traffic laws of the State and the traffic ordinances of the county* where the applicant resides or intends to operate a motor vehicle; and

*as a qualified driver of that category of motor vehicles.*

(b) A person operating the following category or combination of categories of motor vehicles *shall be examined* as provided in section 286–108[2] *and duly licensed* by the examiner of drivers:

. . . .

(3) Passenger cars of any gross vehicle weight rating ... [.]

(Emphases and footnote added.)

The foregoing statute contains absolutely no mention of the term "public highway." Its plain and unambiguous language requires, with certain exceptions not pertinent to this case, that no person shall operate any category of motor vehicles "without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles." The district court's construction of HRS § 286–102 as applying only to those persons who are operating a motor vehicle on a "public highway" is therefore contrary to the literal and unambiguous language of the statute.

### B.

In reaching its conclusion that HRS § 286–102 is only applicable to those persons operating a motor vehicle on a public highway, the district court pointed out that HRS chapter 286 is entitled "Highway Safety," other statutory sections of chapter 286 require operation on a public highway,[3] and the

. (4) The *actual demonstration of ability to exercise ordinary and reasonable control* in the operation of a motor vehicle.

The examinations shall be appropriate to the operation of the category of motor vehicle for which the applicant seeks to be licensed and shall be conducted as required by the director. (Emphases added.)

**3.** A few examples of sections in HRS chapter 286 that specifically restrict their applicability to the operation of a vehicle on a "highway" or "public highway" include: HRS § 286–25 (1993) ("[w]hoever operates, permits the operation of, causes to be operated, or parks any vehicle *on a public highway* without a current official certificate of inspection, issued under section 286–26, shall be fined not more than $100"); HRS § 286–41(a) (1993) ("[e]very owner of a motor vehicle which is to be operated upon the *public highways* shall, for each vehicle owned, ... apply to the director of finance of the county where the

legislative purpose of the chapter was to "foster highway safety by regulating the machines that operate upon the highway and by regulating the machines upon the highway".

Requiring anyone operating a motor vehicle to be properly licensed, however, does promote highway safety. Moreover, the fact that other statutory provisions in HRS chapter 286 specifically refer to the operation of a motor vehicle on a public highway, a requirement absent from HRS § 286–102, supports the notion that the legislature's omission of any reference to "public highway" in HRS § 286–102 was purposeful.

Indeed, the Hawai'i Supreme Court observed in *State v. Figel*, 80 Hawai'i 47, 50, 904 P.2d 932, 935 (1995), that HRS § 286–102(a) (Supp.1992),[4] in contrast to HRS § 291–4.5 (Supp.1992),[5] contains "universally restrictive language[.]" The supreme court recognized in *Figel* the anomaly of "criminaliz[ing] the operation of a vehicle without a license ... without regard to the term 'highway' [pursuant to HRS § 286–102] while prohibiting driving with a license suspended for [driving under the influence of intoxicating liquor] only when it occurs on a 'highway,'" but nevertheless felt "constrained to give effect to the limiting term 'highway' as set forth in HRS § 291–4.5, which is a penal statute." *Id.* at 50, 904 P.2d at 935 (citation omitted).

## C.

Chapter 286, cited as the Hawai'i Highway Safety Act, HRS § 286–1, was originally enacted into law by 1967 Haw.Sess.L. Act 214, at 257. The legislature's declared purpose for the Act, as set forth in Section 1 of the Act, was as follows:

SECTION 1. Declaration of purpose. Death of persons and injuries to them and damage to property with the other losses suffered on account of highway traffic accidents are of grave concern to the State and its citizens as well as to the federal government. The legislature finds and declares that it is in the public interest that the State initiate, coordinate and accelerate every available means to decrease the fatalities, injuries, damages and losses resulting from highway traffic accidents.

1967 Haw.Sess.L. Act 214, § 1 at 257.

Kelekolio argues that since HRS § 286–102 was the legislature's response to "concerns regarding deaths and injuries caused by *highway* traffic accidents," HRS § 286–102 cannot be literally interpreted, but must be construed, in light of its purpose, to apply only to driving on highways. (Emphasis in original.) We disagree.

While the impetus for Act 214, which was codified as HRS chapter 286, may have been concerns about highway traffic accidents, the individual statutory provisions within the chapter are not expressly limited to the regulation of *highway* traffic. Also included in the chapter are provisions for registration and safety inspection of vehicles; safety equipment; driver training schools and driving instructors; motor vehicle licensing; alcohol, drugs, and highway safety (implied consent regulations); and traffic records. *See* HRS chapter 286, Parts II–VIII.

HRS § 286–102 falls within Part VI, entitled "Motor Vehicle Driver Licensing," of

---

vehicle *is to be operated, for the registration thereof*"); HRS § 286–81(a) (Supp.1999) ("[n]o person shall ... [o]perate a motorcycle or motor scooter, on *any highway* in the State unless the person and any passenger the person carries on the motorcycle or motor scooter wears [certain specified protective devices]"); HRS § 286–81(b) (Supp.1999) ("[n]o person less than eighteen years of age shall operate or ride as a passenger on a motorcycle or motor scooter on *any highway* in the State unless the person wears a safety helmet securely fastened with a chin strap").

**4.** HRS § 286–102(a) (Supp.1992) is identical to the version of HRS § 286–102(a) that is at issue in this case.

**5.** HRS § 291–4.5(a) (Supp.1992) provided, in relevant part:

No person whose driver's license has been revoked, suspended, or otherwise restricted pursuant to part XIV of chapter 286 or section 291–4 shall operate a motor vehicle either upon the *highways* of this State while the person's license remains suspended or revoked or in violation of the restrictions placed on the person's license.

*State v. Figel,* 80 Hawai'i 47–48 n. 1, 904 P.2d 932–33 n. 1 (1995) (emphasis in original).

HRS chapter 286. HRS § 286-103 (1993), which is also included in Part VI, evinces the underlying purpose for the licensing of motor vehicle drivers as being the general safety and welfare of the traveling public:

> **Restrictions on driver's license; rules and regulations.** The examiner of drivers may adopt rules and regulations restricting the use of a driver's license in any manner the examiner of drivers may deem necessary *for the safety and welfare of the traveling public* and may impose restrictions with respect to the type of equipment or special mechanical control devices required on the motor vehicle operated by the licensee appropriate to the driving ability of the licensee. Any restrictions shall be indicated on the license issued.

(Emphasis added.)

Given that neither HRS chapter 286 generally or Part VI particularly includes any provision or language that restricts the applicability of the statutes therein to the operation of a motor vehicle *on a highway*, we decline to interpret such a requirement into HRS § 286-102. If the legislature had intended to limit the applicability of HRS § 286-102 to the operation of a motor vehicle on a "public highway," it could easily have done so, as it did in other statutory sections of chapter 286.

### D.

Our review of the legislative history of HRS chapter 286 also indicates that HRS § 286-102 should not be restricted to "public highways." In 1973, the legislature passed House Bill No. 1169, signed into law as 1973 Haw.Sess.L. Act 152, at 236, the purpose of which was to "clarify certain provisions of the Highway Safety Act." Hse. Stand. Comm. Rep. No. 536, in 1973 House Journal, at 989. Act 152 amended HRS § 286-2 to add the following definition, among others:

> 'Highway' means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.

Act 152 also amended HRS § 286-102(a) to provide, in relevant part, as follows:

> No person, except one exempted ... shall operate *upon a highway* a category of motor vehicles listed below without first being examined as provided in section 286-108 and being duly licensed....

(New statutory language underscored.) According to Hse. Stand. Comm. Rep. No. 536 on House Bill No. 1169, which was signed into law as Act 152,

> Your Committee finds that Section 286-102 makes it unlawful for a person to operate a motor vehicle without having first been duly licensed. This section does not make it clear as to when this requirement is intended to apply.
>
> The amendments proposed by this bill attempt to clarify this situation by first defining "highway" in Section 286-2 (definitions section) and second, by inserting in Section 286-102 between "motor vehicle" and "listed below" the words "upon a highway". Your Committee recognizes the intent of this bill and has amended further this bill by inserting "upon a highway" after "shall operate". This would then make Section 286-102 read in part "it shall be unlawful to operate a motor vehicle upon a highway without having first been duly licensed."

Hse. Stand. Comm. Rep. No. 536, in 1973 House Journal, at 989. The only testimony related to this bill that is on file at the State Archives was submitted by the Honorable Richard Y.C. Au, District Judge, District Court of the First Circuit, "[o]n behalf of the judges of the District Courts[.]" In his written testimony, Judge Au stated:

> The purpose of this bill is to extend the provisions of section 286-102 to a person operating a motor vehicle without a license therefor, upon a public highway, or upon a roadway which is privately owned and open to the use of the public, in whole or in part.
>
> Section 286-102, [HRS], *inter alia*, makes it unlawful for a person to operate a motor vehicle, without having first been duly licensed therefor. The section does not make it clear as to whether or not such requirement is intended to apply to a person operating a motor vehicle upon a public highway, or upon private roadways

which are open to the public, such as Kona Street or the streets in some of the older subdivisions of the State (e.g. Kakaako) or other private streets which have not been dedicated to the City and County of Honolulu, or to the other counties.

By Act 152, therefore, the legislature amended HRS § 286–102 to clearly apply only to "highways."

The next year, however, HRS § 286–102 was again amended, this time to delete the very phrase, "upon a highway," that had been added to HRS § 286–102 the previous session. 1974 Haw.Sess.L. Act 80, § 1 at 147. The committee reports on the legislative bill that was signed into law as Act 80 are silent as to the reason for the amendment, except to note that HRS § 286–102 was amended "to correct certain ambiguities and administrative problems" in that section. Sen. Stand. Comm. Rep. No. 456–74, in 1974 Senate Journal, at 936. Nevertheless, it is clear that the legislature specifically removed the requirement that HRS § 286–102 apply only to the operation of a motor vehicle *upon a highway.*

### E.

In *State v. French,* 77 Hawai'i 222, 232, 883 P.2d 644, 654 (App.1994), this court, addressing the defendant's contention that the traffic laws he was convicted of violated his right to travel, quoted with approval the following passage from *Kaltenbach v. Breaux,* 690 F.Supp. 1551, 1554 (W.D.La.1988):

> The state's requirements that all persons who operate motor vehicles *on state highways* possess a valid driver's license and safety inspection tags are valid exercises of the state's police power and are rationally related to the state's purpose in safeguarding the health and safety of its citizens, and the means employed by the state are rationally related to the purpose of the statutes.

(Brackets and ellipses omitted; emphasis added.) The district court quoted the foregoing language in its Conclusion of Law No. 8. In *French,* however, Defendant operated a motor vehicle on a public highway and was cited for operating a motor vehicle "without first being ... licensed as a qualified driver."

*French,* 77 Hawai'i at 225, 883 P.2d at 647. The issue of whether the statute applied to the operation of a motor vehicle on a non-public highway was not before this court. Additionally, as previously noted, the language quoted by the district court in its Conclusion of Law No. 8 was taken from a federal case. Therefore, the holding is not dispositive to the case at bar.

### F.

In *State v. Watson,* 71 Haw. 258, 787 P.2d 691 (1990), the defendant appealed his conviction for driving under the influence of intoxicating liquor in violation of HRS § 2914(a)(1), on grounds that "there was no proof that he was operating a vehicle on a public highway, and ... consequently, his motion to dismiss should have been granted." *Id.* The Hawai'i Supreme Court rejected the defendant's argument after observing that "nothing in HRS § 291–4 ... requires that the operation of a vehicle while under the influence of intoxicating liquor be done on a public highway." *Id.* Responding to the defendant's argument that "other statutes, in pari materia, apply only to actions taken on public highways[,]" the supreme court stated:

> It is true that other sections relating to traffic violations are limited to actions taken on public highways, but the strong public policy against the operation of a vehicle while under the influence of intoxicating liquor is sufficient to extend the prohibition of the statute to any vehicle, which is exactly what the statute provides.

*Id.* at 258–59, 787 P.2d at 692.

Like HRS § 291–4, there is a strong public policy against the operation of a vehicle without being duly licensed. As the State points out in its brief,

> [i]f operation on a public highway was a requirement of § 286–102, there would be nothing illegal about a parent allowing their [sic] 10 year old to park their [sic] car in a busy shopping mall while the parent gets a head start on shopping.... It is clear that the intent of § 286–102 is to prevent unskilled, unlicensed drivers from operating motor vehicles not only on public highways, but anywhere, because of the

great potential for accident, injury, damage and inconvenience.

January 20, 1999 and remand for further proceedings consistent with this opinion.

## CONCLUSION

In light of the foregoing discussion, we vacate the "Conclusions of Law" and "Order of Dismissal" entered by the district court on