883 P.2d 644

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Dale E. FRENCH, Defendant–Appellant.**

**No. 16317.**

Intermediate Court of Appeals of Hawai'i.

Oct. 31, 1994.

Dale E. French, defendant-appellant pro se, on the brief.

Gerald A. Garcia, Deputy Prosecuting Atty., County of Hawai'i, on the brief, for plaintiff-appellee.

Before BURNS C.J., and HEEN and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Dale E. French (Defendant), appearing *pro se*, appeals from traffic violation convictions in the district court. Defendant argues, in effect, that his right to a fair trial was violated. He also claims that the district court lacked jurisdiction in his case because the United States Supreme Court has original jurisdiction pursuant to article III, section 2, of the United States Constitution and alternatively, because he is a member of the Hawaiian Kingdom. Finally, he contends that the traffic statutes involved violated his right to travel.

We affirm.

On January 9, 1991, Defendant was arraigned on various traffic offenses in the district court. He filed a written statement and "plea of innocence," and the matter was transferred to the circuit court. On January 17, 1991, the State filed a complaint charging Defendant with the violation of several traffic offenses. The complaint charged that on December 12, 1990, Defendant operated a motor vehicle "without [it] being insured under a no-fault policy" in violation of Hawai'i Revised Statutes (HRS) § 431:10C–104(b) (Special Pamphlet 1987) (Count I), "without being restrained by a seat assembly" in violation of HRS § 291–11.6 (1985) (Count II), "without a current official certificate of inspection" in violation of HRS § 286–25 (1985) (Count III), and "without first being . . . licensed as a qualified driver[,]" in violation of HRS § 286–102 (1985) (Count IV). On February 12, 1991, Defendant filed an answer.

Pursuant to a recommendation filed on October 4, 1991, Defendant was assigned

counsel from the Office of the Public Defender. On November 6, 1991, the deputy public defender assigned to Defendant filed a motion to withdraw as counsel. In the affidavit in support of the motion, the deputy disclosed that, "Defendant requested [counsel] to advance a claim of a constitutional right to free and unregulated travel ... [and] to raise a claim of Hawaiian sovereignty[.]" According to the affidavit, counsel explained to Defendant that the constitutional claim "appears unwarranted under existing law" and the sovereignty claim "has no factual basis." The affidavit further advised that, "Defendant ... wanted [counsel] to file a motion to withdraw as counsel." The motion to withdraw was granted on November 6, 1991.[1]

On December 10, 1991, Defendant, acting *pro se*, voluntarily waived his right to a jury trial and the case was remanded to district court for a judge trial.[2] On March 9, 1992, Defendant filed a "statement of innocence" and a motion to dismiss, alleging that the district court lacked personal and subject matter jurisdiction. He was again arraigned on March 11, 1992, and the court treated Defendant's written statements as a plea of not guilty.

Defendant's jurisdictional challenge was argued at a hearing on April 8, 1992, where Defendant appeared with an "interpreter." The court issued an Order Denying Defendant's Motion to Dismiss on May 22, 1992. It ruled simply that "upon consideration of the arguments presented, [and] the files and records herein[,] ... Defendant's Motion to Dismiss is denied as the Court had [sic] jurisdiction."

The "interpreter," Joseph Wilkinson, (Wilkinson) was apparently present to aid Defendant who claimed to have problems hearing. The district court minutes indicate that Defendant was "hard of hearing" and Wilkinson, a friend of Defendant, had also been present to act as an "interpreter" at Defendant's

arraignment on March 11, 1992, and was at his pre-trial motions hearing on May 13, 1992. The record does not indicate whether Wilkinson was present at Defendant's trial or not.

Defendant filed a pre-trial motion on May 1, 1992, where he made a number of requests. The requests were for (a) a hearing, (b) answers on questions about the law and the courts, (c) the court to "use fair procedure[,]" by conducting all matters connected to his case in writing, because his "hearing ha[d] been 'shot down' by too many years in the construction trade[,]" (d) the court to appoint him counsel of his choice, (e) his rights to be restored, and (f) full disclosure under Hawai'i Rules of Penal Procedure (HRPP) Rule 16 pertaining to discovery.

Request (a), Defendant's request for a hearing on his pre-trial motions, was granted, and a hearing held on May 13, 1992. According to the court's minutes, the "court answered [Defendant's] questions of law" in satisfaction of item (b).

In connection with item (c), the court apparently granted Defendant's request relating to proceedings being in writing, but to what extent this was required is not clear.

Defendant's request for counsel of his choice, item (d), was also granted by the court on the condition that counsel be licensed by the State. In his brief, Defendant states that he did not want appointed counsel from the public defender's office or any counsel licensed by the State because he "[could not] afford to have an enemy in [his] camp as counsel."

Item (e) apparently amounts to a demand that the case against him be dismissed. Finally, the minutes indicate that the "State handed ... copies of tickets & information regarding license [sic] to [Defendant]" in

---

1. The Order states: "The Court has considered the input of the Defendant, counsels [sic] for the parties and is fully advised on the issues; therefore, IT IS ORDERED, ADJUDGED AND DECREED that: ... the Defendant does not want the Public Defender or any licensed attorney to represent him and he wishes to represent himself[.]"

2. In the Order Remanding the Case to the District Court filed on December 10, 1991, the circuit court found that "Defendant has made a knowing, intelligent[,] and voluntary decision to waive his right to a jury trial, and he now seeks a jury-waived trial before a judge[.]"

compliance with item (d), his HRPP Rule 16 disclosure request.[3]

Defendant was tried on July 8, 1992, and found guilty. The district court imposed fines for the convictions.[4] On July 17, 1992, Defendant appealed.[5]

Defendant appears *pro se* on his appeal. Neither party requested that a transcript of the proceedings be made a part of the Record On Appeal. In his reply brief, Defendant claims "no transcript [is] needed."

As far as we can determine, Defendant's contentions on appeal are (1) the proceedings constituted a "kangaroo court," (2) "as a member of the Kingdom of Hawai'i, the jurisdiction [over defendant] is clearly that of the Kingdom of Hawai'i," (3) as a "sovereign citizen of [the] U.S.A." the court lacked jurisdiction over him, and the statutes under which he was convicted violated his right to travel.

### I.

We examine Defendant's first contention.

A review of the available record does not disclose any violation of Defendant's right to a fair trial which would result in reversible error.

█ Defendant declares he was "not a person versed in law." However, Defendant was afforded counsel by the Public Defender's Office but rejected appointed counsel and chose to proceed *pro se*. The affidavit in support of the deputy public defender's motion to withdraw states that, "Defendant ... expressed surprise [sic] that [counsel] was appointed ... on his behalf, ... [and] was quite adamant that he did not want [counsel's] representation or that of any other attorney from the [Public Defender's] office[.]" Under the United States Constitu-tion, Defendant has the constitutional right to conduct his own defense, *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562 (1975), and the record indicates that Defendant clearly and unequivocally demanded to proceed *pro se.* Moreover, by refusing *licensed* counsel, Defendant foreclosed any appointment of counsel on his behalf. Defendant cannot complain about the quality of his own defense once he chooses to represent himself. *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46.

█ We are mindful that "the appellate court must determine from the record whether there was an unequivocal waiver" of Defendant's right to counsel. *State v. Dickson*, 4 Haw.App. 614, 621, 673 P.2d 1036, 1042 (1983). The record does not expressly indicate that the trial court "warn[ed] ... [D]efendant of the dangers and disadvantages of self-representation." *Id.* at 623, 673 P.2d at 1043. However, unlike *Dickson*, Defendant here does not claim on appeal that he was deprived of his right to counsel. Furthermore, we believe error, if any, was harmless beyond a reasonable doubt as we indicate *infra. Id.*

Defendant also claims to be "stone deaf," but he apparently had the aid of an "interpreter" to help him at the arraignment and plea, his motion to dismiss for lack of jurisdiction, and his pre-trial motions hearing. We have no record to indicate that his hearing problem impaired his ability to defend at trial. Rather, it appears that Defendant was able to proceed, for in his "Rebuttal To Answering Brief," he states that he questioned the arresting officer at the trial. Additionally, although the minutes indicate that Defendant requested that the proceedings be conducted in writing, the record does not dis-

---

**3.** The minutes also indicate that Defendant's request for "more time prior to trial" was also granted and the court continued the trial date from June 10, 1992 to July 8, 1992.

**4.** Defendant was fined $1,000 on Count I, $20 on Count II, $15 on Count III, $75 on Count IV, and $5 towards driver's education on each count.

**5.** The State filed a motion to dismiss Defendant's appeal on January 21, 1993, for "not providing transcripts of the proceedings and not preparing his Opening Brief in conformity with the rules." An order denying the motion to dismiss Defendant's appeal was filed by the Hawai'i Supreme Court on February 12, 1993. In the same order, the district court was ordered to supplement the record on appeal with "judgments entered in this case." The judgments were filed on February 17, 1993, indicating that Defendant was found guilty and fined for the various offenses charged by the complaint.

close the extent to which this request was or was not followed or what, if any, objections were made concerning this item.

Ultimately, we consider error at trial, if any, harmless beyond a reasonable doubt because Defendant never denied committing the violations. In Defendant's Statement of Fact filed on July 5, 1992, he states,

Comes now [Defendant] ... and claims as follows:

1. I did drive without a driver's license.
2. I did drive without insurance.
3. I did drive without wearing a seat belt.
4. I did drive without a current safety inspection sticker.
5. I did drive with an expired weight tax sticker.

■ Thus, Defendant does not deny the material facts establishing his criminal liability, but raises defenses of avoidance, challenging the district court's jurisdiction and the constitutionality of the statutes, essentially matters of law, which are subject to our *de novo* review. *See Franks v. City & County,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993) ("interpretation of a statute is a question of law reviewable *de novo*"); *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992) ("dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo*"). Holding as we do, *infra,* that such defenses cannot be sustained, we find that error, if any, was harmless beyond a reasonable doubt.

## II.

■ Second, Defendant claims to be a member of the Kingdom of Hawai'i since he is an "adoptive" Hawaiian. Consequently, he argues that jurisdiction over him lies with the Hawaiian Kingdom and not with the district court. While we do not dispute the sincerity of his belief, this particular kind of claim was rejected in *State v. Lorenzo,* 77 Hawai'i 219, 221, 883 P.2d 641, 643 (App. 1994), which held that presently there is "no factual (or legal) basis for concluding that the [Hawaiian] Kingdom exists as a state in accordance with recognized attributes of a state's sovereign nature."

## III.

Next, Defendant asserts that under article III, section 2 of the United States Constitution, the United States Supreme Court, not the district court, has original jurisdiction of this case because the State of Hawai'i is a party. While the answer to this contention might appear evident, the issue is one which has been raised in other cases in the trial courts.

■ Defendant relies upon the following paragraph in article III, section 2:

*In all Cases* affecting Ambassadors, other public Ministers and Consuls, and those *in which a State shall be Party, the supreme Court shall have original Jurisdiction.* In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

U.S. Const. art. III, § 2, cl. 2 (emphases added). Generally, article III of the United States Constitution [6], authorizes Congress to

---

6. U.S. Const. art. III, § 2 states in full:

**Section 2.** The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party; to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and

between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall

"establish the 'inferior Courts'" and to "determin[e] what cases, if any, should be channelled to the federal courts." *South Carolina v. Regan*, 465 U.S. 367, 396, 104 S.Ct. 1107, 1123–24, 79 L.Ed.2d 372 (1984) (O'Connor, J., concurring). The "one textual exception" to Congress' authority to decide which case will be heard by a particular court is found in the clause granting original jurisdiction to the United States Supreme Court. *Id.*

The purpose of the original jurisdiction clause "'was to open and keep open the highest court of the nation for the determination, in the first instance, of suits involving a State or a diplomatic or commercial representative of a foreign government.'" *Id.* at 397, 104 S.Ct. at 1124 (quoting *Ames v. Kansas*, 111 U.S. 449, 464, 4 S.Ct. 437, 444, 28 L.Ed. 482 (1884)). Consistent with this purpose, "original jurisdiction depends solely on the character of the parties, and is confined to the cases in which are those enumerated parties and those only." *California v. Southern Pacific Co.*, 157 U.S. 229, 257–58, 15 S.Ct. 591, 602–03, 39 L.Ed. 683 (1895); *Duhne v. N.J.*, 251 U.S. 311, 314, 40 S.Ct. 154, 154–55, 64 L.Ed. 280 (1919) (quoting *Louisiana v. Texas*, 176 U.S. 1, 16, 20 S.Ct. 251, 256, 44 L.Ed. 347 (1899)). *See also California v. Arizona*, 440 U.S. 59, 65, 99 S.Ct. 919, 923, 59 L.Ed.2d 144 (1979) ("The constitutional grant to this Court of original jurisdiction is limited to cases involving the States and the envoys of foreign nations.").

■ The first part of clause 2, section 2, of article III, confers original jurisdiction in the United States Supreme Court over "all Cases affecting Ambassadors, other public Ministers and Consuls[.]" U.S. Const. art. III, § 2, cl. 2. There is no evidence that Defendant is a "diplomatic or commercial representative of a foreign government" and thus, he is not a party included under the clause. *Regan*, 465 U.S. at 397, 104 S.Ct. at 1124 (quoting *Ames*, 111 U.S. at 464, 4 S.Ct. at 444).

■ The second part of clause 2, section 2, of article III, grants original jurisdiction when "a State shall be Party" to a case.

U.S. Const. art. III, § 2, cl. 2. Under article III, section 2, clause 1, "the cases in which a State may be a party are those between two or more States; between a State and citizens of another State; between a State and foreign States, citizens, or subjects; and between the United States and a State...." *Southern Pacific Co.*, 157 U.S. at 258, 15 S.Ct. at 602–03 (citation omitted). "The language, [then,] 'in all cases in which a State shall be party,' [in article III, section 2, clause 2,] means in all the cases above enumerated [in clause 1] in which a State shall be a party...." *Id.* at 257, 15 S.Ct. at 602. Cases between a state and one of its own citizens are not included in the enumeration. *See Duhne*, 251 U.S. at 314, 40 S.Ct. at 154–55 ("original jurisdiction ... is confined to the cases in which are those enumerated parties and those only."); *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 299, 8 S.Ct. 1370, 1378–79, 32 L.Ed. 239 (1887) (quoting *Cohens v. Virginia*, 19 U.S. 264, 399, 5 L.Ed. 257 (1821)) (original jurisdiction does not apply in a "'case between a State and its citizens'"). Accordingly, article III, section 2, clause 2 does not grant original jurisdiction to the United States Supreme Court in a case, as here, between a state and one of its own citizens.

■ Furthermore, "original jurisdiction [of the United States Supreme Court under article III, section 2, clause 2 in cases where the State is a party] is confined to civil suits where damage has been inflicted or is threatened, not to the enforcement of penal statutes of a State." *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 446, 65 S.Ct. 716, 721, 89 L.Ed. 1051 (1945) (citing *Pelican Ins. Co.*, 127 U.S. at 297–300, 8 S.Ct. at 1377–79); *Oklahoma v. Gulf, Colorado & Santa Fe Ry. Co.*, 220 U.S. 290, 300–301, 31 S.Ct. 437, 441–42, 55 L.Ed. 469 (1910).

■ Traffic statutes, HRS §§ 431:10C–104(b), 291–11.6, 286–25, and 286–102 are penal in nature. The offenses of driving without a driver's license and driving without a safety inspection may be punished by imprisonment. HRS § 286–136 (1985) and HRS § 286–25. Driving without no-fault insurance may be punished by imprisonment

be at such Place or Places as the Congress may by Law have directed.

for multiple violations. HRS § 431:10C–117 (Special Pamphlet 1987). Driving without a seat belt is a violation. HRS § 291–11.6. And "although a violation does not constitute a crime, it constitutes a penal offense, and the legislature intended its penalties [for violations] to be criminal penalties." *State v. Simeona*, 10 Haw.App. 220, 231, 864 P.2d 1109, 1115 (1993). So, additionally, original jurisdiction does not lie in the United States Supreme Court because the instant case involves state penal statutes and is not civil in nature.[7]

## IV.

Finally, Defendant argues that the traffic statutes involved only apply to businesses and "State vehicals [sic][,]" not to a "sovereign" individual like himself who utilizes his vehicle for "personal needs[.]" He further maintains that if the statutes do apply to him, they would violate his right to travel. In addressing Defendant's argument, we scrutinize the statutes, the authority for the statutes, and Defendant's right to travel.

## A.

■ The statutes in issue do, in fact, apply to individuals who use their vehicles for "personal needs."

With respect to Count I, HRS § 431:10C–104(b) states:

> *Every owner* of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

(Emphasis added.) "Owner" of a motor vehicle means "a person who holds the legal title to a motor vehicle[.]" HRS § 431:10C–103(14) (Special Pamphlet 1987). "Person," in turn, is defined as "not only individuals, but corporations, firms, associations, and societies." HRS § 431:10C–103(15) (Special Pamphlet 1987).

With respect to Count II, HRS § 291–11.6(a), in pertinent part, provides: "[N]o person ... [s]hall operate a motor vehicle upon any public highway unless the person is restrained by a seat belt assembly...."

With respect to Count III, HRS § 286–25 provides: "Whoever operates, permits the operation of, causes to be operated, or parks any vehicle on a public highway without a current official certificate of inspection ... shall be fined ... or imprisoned...."

With respect to Count IV, HRS § 286–102(a) provides: "No person, except one exempted under section 286–105 ..., shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver...."[8] The categories of motor vehicles include motor vehicles of less than ten thousand pounds, as well as vehicles of more than ten thousand pounds. HRS § 286–102(b)(3) and (4).

None of the provisions in HRS §§ 431:10C–104(b), 291–11.6, 286–25, and 286–102 limit their application to vehicles used for state or business purposes only. The statutes apply to persons and a "person" is defined, "[i]n general usage, [as] a human being (i.e. natural person)." *Black's Law Dictionary* 1142 (6th ed. 1990). And "[w]hoever" means "whatever person[.]" *Merriam–Webster's Collegiate Dictionary* 1351 (10th ed. 1993). As a result, on their faces, the statutes apply to Defendant.

7. "The original jurisdiction of the Supreme Court, in cases where a State is a party, refers to those cases in which, according to the grant of power made in the preceding clause, jurisdiction might be exercised in consequence of the character of the party, and an original suit might be instituted in any of the federal courts; not to those cases in which an original suit might not be instituted in a federal court. Of the last description is every case between a State and its citizens, and perhaps every case

in which a State is enforcing its penal laws. In such cases, therefore, the Supreme Court cannot take original jurisdiction."
*Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 298–99, 8 S.Ct. 1370, 1378–79, 32 L.Ed. 239 (1887) (quoting *Cohens v. Virginia*, 19 U.S. 264, 398–99, 5 L.Ed. 257 (1821)).

8. Defendant does not claim, nor do we find that he has established the necessary facts, to be exempt under HRS § 286–105 (Supp.1992).

Having found that the statutes do apply to Defendant, we turn to the authority underlying these traffic laws. As part of the exercise of its police power, a state may, in the absence of national legislation, "rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,—those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers...." *Hendrick v. Maryland*, 235 U.S. 610, 622, 35 S.Ct. 140, 142, 59 L.Ed. 385 (1914). *Accord State v. Shak*, 51 Haw. 612, 614, 466 P.2d 422, 424 (1970), *cert. denied*, 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d 190 (1970). We have not found, nor has Defendant referred us to any federal legislation pre-empting the State's authority to regulate the operation of motor vehicles in connection with the offenses charged. It follows, then, that the State, here, may "rightfully prescribe uniform regulations ... in respect to the operation upon its highways of all motor vehicles...." *Hendrick*, 235 U.S. at 622, 35 S.Ct. at 142.

### B.

Defendant, however, claims a "constitutional right to travel in the common mode of the times, unrestricted in any manner so long as it does not cause harm, damage or infringe upon the property and/or rights of others." The right to travel has been recognized as a fundamental constitutional right under the United States Constitution. *Shapiro v. Thompson*, 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969). This fundamental right is founded on the principle that citizens of the United States, "'as members of the same community, must have the right to pass and repass through every part of it without interruption, *as freely as in our own States.'*" *Id.* at 630, 89 S.Ct. at 1329 (quoting *Passenger Cases*, 48 U.S. 283, 492, 12 L.Ed. 702 (1849)) (emphasis added).[9] Consequently, the right to travel recognized by the supreme court in this context is the right to interstate travel. *Attorney Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254–56, 94 S.Ct. 1076, 1080–81, 39 L.Ed.2d 306 (1974); *Shapiro, supra; United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

In this case, Defendant was not traveling interstate. The statutes' self-evident objectives are regulation of highway use and public safety within the state. Furthermore, the statutes in question do not differentiate at all between residents and non-residents so as to raise the specter of resident-biased classifications burdening interstate travel. *Shapiro*, 394 U.S. at 634, 89 S.Ct. at 1331. We hold, therefore, that Defendant's constitutional right to travel, as a state resident, has not been violated.

But the Supreme Court of Hawai'i has recognized a right to freedom of movement under article I, section 2 of the Constitution of the State of Hawai'i. This right "include[s] the right of men [and women] to move from place to place, to walk in the fields in the country or on the streets of a city, [and] to stand under open sky...." *State v. Shigematsu*, 52 Haw. 604, 610, 483 P.2d 997, 1001 (1971). Yet, this right, too, is subject to the State's police power to regulate an individual's conduct for the protection of society. *Id.* at 610–11, 483 P.2d at 1001. That being so, "[p]ursuant to its police power, the State may regulate the operation of motor vehicles for the safety and order of the general public." *Tanner v. Heise*, 672 F.Supp. 1356, 1360 (D.Idaho 1987). Thus, statutes similar to the ones here are commonly held to be constitutional because the requirements imposed on the operation of motor vehicles are rationally related to the purpose of the statutes.

---

9. The United States Supreme Court has not considered the issue of whether there is a right to intrastate travel. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254–56, 94 S.Ct. 1076, 1080–81, 39 L.Ed.2d 306 (1973). However, "the right to travel is not a right to travel in any manner one wants, free of state regulation." *United States ex rel. Verdone v. Circuit Court for Taylor County*, 851 F.Supp. 345, 350 (W.D.Wis. 1993) (citing *Aptheker v. Secretary of State*, 378 U.S. 500, 526, 84 S.Ct. 1659, 1674, 12 L.Ed.2d 992 (1964) (Clark, J. dissenting)).

232

The state's requirements that all persons who operate motor vehicles on state highways possess a valid driver's license [and] safety inspection tags ... are valid exercises of the state's police power [and] ... are rationally related to the state's purpose in safeguarding the health and safety of its citizens, and the means employed by the state are rationally related to the purpose of the statutes.

*Kaltenbach v. Breaux,* 690 F.Supp. 1551, 1554 (W.D.La.1988). *See also Redden v. State,* 739 P.2d 536 (Okl.Cr.1987) (defendant did not have an absolute vested right to use highways); *State v. Milligan,* 727 P.2d 213 (Utah 1986) (defendant's claim that right to locomotion pre-empts him from state regulations failed in light of state's police power to control operation of motor vehicles); *United States ex rel. Verdone v. Circuit Court for Taylor County,* 851 F.Supp. 345, 350 (W.D.Wis.1993) ("[t]he Constitution [of the United States] does not give [Defendant] the right to ignore ... traffic laws at his own discretion"). *Cf. Tanner, supra* (religious belief that one should be able to drive unhampered by traffic laws does not prevail over the state's police power). Finally, "we note that a tool which has aided us significantly in drawing the line between the police power and individual freedom ... is the well-established doctrine that in regulating the use of public highways, the state has always been afforded exceptionally broad discretion." *State v. Cotton,* 55 Haw. 138, 141–42, 516 P.2d 709, 711 (1973).

We hold, therefore, that the subject statutes do apply to Defendant and that they do not violate his freedom of movement.

## V.

Based on the foregoing reasons, the Judgments filed on February 17, 1993, are affirmed.