929 P.2d 78

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Doug J. FORD, Respondent–Appellant.**

No. 16520.

Supreme Court of Hawai'i.

Dec. 9, 1996.

Doug J. Ford, on the briefs, Honolulu, pro se.

Charlotte J. Duarte, Deputy Prosecuting Attorney, on the briefs, Honolulu, for petitioner-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Following a bench trial, the district court found respondent-appellant Doug J. Ford guilty of two counts of anchoring or mooring a vessel on Hawai'i's ocean waters or navigable streams without a permit, in violation of Rule 19–62–17 of the Administrative Rules of the Department of Transportation, Harbors Division, Small Boat Harbors, Part 3 (1981) [hereinafter, harbor rules]. On appeal, the Intermediate Court of Appeals (ICA) vacated the judgment of the district court and remanded for a jury trial based on its decision in *State v. Simeona,* 10 Haw.App. 220, 864 P.2d 1109 (1993). *See State v. Ford,* No. 16520, 10 Haw.App. 629, 871 P.2d 800 (Haw. App. Jan. 18, 1994) (mem.). We granted petitioner-appellee State of Hawai'i's (the prosecution) application for a writ of certiorari in order to review the ICA's opinion. For the reasons set forth below, we reverse the portion of the ICA opinion granting Ford the right to a jury trial. However, because we agree with the ICA that the district court violated Hawai'i Rules of Penal Procedure (HRPP) Rule 10.1(b) in derogation of Ford's rights against self-incrimination, we vacate the judgment of the district court and remand for a new trial without a jury.

## I. BACKGROUND

On June 2, 1992, state harbor agent Susan Keliikuli issued Ford two citations for mooring two vessels in the Ke'ehi Lagoon without proper permits in violation of Rule 19–62–17 of the harbor rules. Rule 19–62–17 provides in pertinent part: "A vessel shall not be moored, anchored, or stored [a]t a berth or space other than that to which it was properly assigned." [1] Pursuant to Hawai'i Revised Statutes (HRS) § 266–25 (1993), Ford was subject to a fine of not more than $10,000 for each violation and/or the loss of his Hawai'i

operating and mooring privileges for up to two years. Specifically, HRS § 266–25, the penalty provision for all Department of Transportation harbor rules, provides in pertinent part:

**Violation of rules; penalty.** Any person who violates any rule made, adopted, and published by the department of transportation ... shall be fined not more than $10,000 for each offense, ... provided that in addition to or as a condition to the suspension of the fines and penalties, the court may deprive the offender of the privilege of operating or mooring any vessel in state waters for a period of not more than two years.

On September 16, 1992, the district court orally arraigned Ford on both charges. Appearing *pro se,* Ford pleaded not guilty, and a bench trial commenced. The following colloquy then ensued:

[PROSECUTION]: Your Honor, I believe there's a stipulation of fact that vessel number HA8037B, which is a sail-type vehicle [sic], and HA 7490, ... a sail-type vessel, does belong to Doug Ford.

THE COURT: Is that correct, Mr. Ford?

FORD: Yes it is. I stipulate to those facts.

The prosecution called Keliikuli as its only witness. Ford cross-examined her, and the prosecution rested. The trial court then asked Ford if he had a statement to make, and if so, to step up to the witness stand and be sworn. Ford did so, adding that he "[did not] knowingly waive any of [his] rights at any time," and demanded "all of [his] rights at all times." Ford then moved, *inter alia,* for a jury trial, arguing that the maximum fine of $10,000 authorized under HRS § 266–25 rendered a violation of Rule 19–62–17 a constitutionally serious offense, thereby entitling him to a trial by jury. The district court denied Ford's motion as untimely. After denying Ford's remaining motions, the district court found Ford guilty of both violations and fined him $500 for each citation. At no time before or during trial did the trial

---

1. As a result of the transfer of harbor regulation to the Department of Land and Natural Resources, Rule 19–62–17 has since been repealed.

The corresponding new provision is Rule 13–231–17 of the Administrative Rules of the Department of Land and Natural Resources.

court apprise Ford of his constitutional right against self-incrimination pursuant to HRPP 10.1(b).

Ford appealed. The ICA vacated the judgment of the district court and remanded for a jury trial, holding without analysis that, "[b]ased on *State v. Simeona,* we conclude that Ford had a state constitutional right to a jury trial." *Ford,* slip op. at 2 (citation omitted). We granted the prosecution's timely application for a writ of certiorari.

## II. *DISCUSSION*

### A. *Right to Jury Trial*

#### 1. The penalties authorized under HRS § 266-25 are criminal penalties.

The Sixth Amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution both provide that, "[i]n all *criminal prosecutions,* the accused shall enjoy the right to a speedy and public trial by an impartial jury[.]" (Emphasis added.) The prosecution initially contends that, "[p]ursuant to [HRS § ] 701-107(5), any offense which is not a felony, misdemeanor, or petty misdemeanor is not a crime or criminal offense, but a violation. Therefore, [Ford] was not entitled to a jury trial in this case because he was charged with a violation...." HRS 701-107(5) (1993) provides:

> An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

Although the ICA did not specifically address the prosecution's section 701-107(5) argument in its memorandum opinion in the instant case, it did so in *Simeona,* wherein it concluded that,

> although a violation does not constitute a crime, it constitutes a penal offense, and the legislature intended its penalties to be

criminal penalties. With respect to HRS § 266-25, we have three reasons for this conclusion.

> First, ... HRS Chapter 831 recognizes that there are "penal offense[s]" for which no jail sentence may be imposed and that the records of these penal offenses are "criminal records."

> . . . .

> Second, no statute describes its penalties as civil penalties.

> Third, HRS § 266-24 (Supp.1992) vests in the state director of transportation and subordinates the power of police officers to enforce department of transportation rules.

*Simeona,* 10 Haw.App. at 231-32, 864 P.2d at 1115. *See also State v. Chow,* 77 Hawai'i 241, 249, 883 P.2d 663, 671 (App.1994) ("This court has stated ... that 'although a violation does not constitute a crime, it constitutes a penal offense.'" (Quoting *Simeona,* 10 Haw. App. at 231, 864 P.2d at 1115.) (Internal brackets omitted.)); *State v. French,* 77 Hawai'i 222, 230, 883 P.2d 644, 652 (App.1994) (same).

█ We agree with the reasoning of the ICA in *Simeona* on this issue and hold that the penalties authorized in HRS § 266-25 are criminal penalties, making Ford potentially eligible for a jury trial.

#### 2. The ICA misconstrued Hawai'i case law.

█ The right to a jury trial does not attach in every criminal prosecution. Following federal jurisprudence, we have specifically held that "a defendant charged with a petty crime does not have a constitutional right to a jury trial." *State v. Nakata,* 76 Hawai'i 360, 367, 878 P.2d 699, 706 (quoting *State v. Wilson,* 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993) (citation omitted)), *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *see Duncan v. Louisiana,* 391 U.S. 145, 149-50, 88 S.Ct. 1444, 1447-48, 20 L.Ed.2d 491, *reh'g denied,* 392 U.S. 947, 88 S.Ct. 2270, 20

L.Ed.2d 1412 (1968).[2] Thus, in determining Ford's right to a jury trial, the dispositive question before us is whether a violation of Rule 19–62–17 of the harbor rules constitutes a petty or serious offense under Hawai'i case law.

As previously stated, the ICA held that, "[b]ased on *State v. Simeona,* we conclude that Ford had a state constitutional right to a jury trial." *Ford,* slip op. at 2 (citation omitted). The prosecution argues that the ICA erred in relying on *Simeona* because that case employed an erroneous analysis that led to an improper determination that the accused had a right to a jury trial. We therefore examine the ICA's analysis and holding in *Simeona.*

Simeona, like Ford, was cited for two violations of Rule 19–62–17 of the harbor rules. The district court found Simeona guilty and fined him $25.00 for each of the two offenses. On appeal, Simeona contended, *inter alia,* that he was denied his right to a jury trial.

■ The ICA in *Simeona* correctly concluded that only serious offenses afford the accused a constitutional right to a jury trial. 10 Haw.App. at 233–34, 864 P.2d at 1116 (citing *State v. Shak,* 51 Haw. 612, 614, 466 P.2d 422, 424 (1970)). However, the ICA then asserted that

> Hawai'i precedent has stated that[,] if the offense satisfies *any one* of the following factual requirements, the offense is serious rather than petty:
>
> 1. the offense is by its nature serious because:
>
> A. at common law it was triable by a jury; or
>
> B. it is of a grave character, affecting the public at large; or
>
> C. it involves moral delinquency; or
>
> D. society regards it with sufficient opprobrium; or
>
> 2. the magnitude of the possible penalty for the offense makes it serious.

*Simeona,* 10 Haw.App. at 242, 864 P.2d at 1119 (emphasis added).

■ The analysis articulated in *Simeona* misconstrued a line of Hawai'i cases laying out the proper criteria to be employed when determining whether an offense is petty or serious. In making such a determination, we have consistently employed the following analysis, recently reaffirmed in *State v. Lindsey,* 77 Hawai'i 162, 883 P.2d 83 (1994):

> We analyze three factors to determine whether an offense is constitutionally petty or serious: (1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty.
>
> Under the first factor, we consider the "traditional treatment" of the offense and whether the offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury.
>
> Under the second factor, we consider whether an offense affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labelling the offense as constitutionally serious. In applying the second factor, the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense.

---

2. In *Duncan,* the United States Supreme Court described the historical origin of this exception to the constitutional right to a jury trial:

> So-called petty offenses were tried without juries both in England and in the Colonies and *have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions.* There is no substantial evidence that the Framers intended to depart from this established common-law practice[.]

*Duncan,* 391 U.S. at 160, 88 S.Ct. at 1453 (emphasis added). The Seventh Circuit has succinctly stated the efficiency rationale that also supports this judicial policy:

> Besides the historical argument for this exception, the social interest in effective law enforcement has been deemed to outweigh the citizen's interest in interposing a jury of lay persons between the state and himself [or herself] when the penalty he [or she] faces is mild. The burden of providing jury trials for all petty offenses has been thought disproportionate to the citizen's need for the additional protection against the power of the state that a jury would give him [or her]. *Blanton v. City of North Las Vegas,* 489 U.S. 538, 543, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989).

*United States v. Soderna,* 82 F.3d 1370, 1377 (7th Cir.1996).

Finally, the third factor focuses on the authorized penalty for the offense. We consider not only the maximum possible prison term, but also the possible additional statutory "mix of penalties" that may attach to the offense.

*Id.* at 163, 883 P.2d at 84 (quoting *Nakata,* 76 Hawai'i at 367, 878 P.2d at 706 (citation and some quotation marks omitted)); *Wilson,* 75 Haw. at 74, 856 P.2d at 1244; *State v. O'Brien,* 68 Haw. 38, 41–43, 704 P.2d 883, 885–87 (1985).

■ Contrary to the ICA's assertion, an offense is not automatically deemed serious upon satisfaction of *any one* of the factors set out in our case law. As we have clearly stated, "we must apply *all three factors* ... in determining whether an offense is petty or serious." *Lindsey,* 77 Hawai'i at 163, 883 P.2d at 84 (emphasis added) (quoting *Nakata,* 76 Hawai'i at 371, 878 P.2d at 710).

■ Furthermore, our prior decisions do not contemplate a *primary* examination of whether an offense involves moral delinquency, or whether society regards it with sufficient opprobrium. Rather, these considerations are merely intended to shed light on the more general determination regarding the gravity of the offense. Factors 1(C) and 1(D) of the *Simeona* analysis are therefore erroneous additions to the core analytical framework that we have established for determining whether an offense is constitutionally serious.

Applying its analysis, the ICA concluded that "a possible $10,000 fine plus the possible deprivation of the privileges of operating and mooring any vessel in Hawai'i waters for a period of two years causes each penal offense to be serious and triggers the state constitutional right to a jury trial." *Simeona,* 10 Haw.App. at 245, 864 P.2d at 1120–21. Although the ICA purportedly based its holding upon consideration of both authorized penalty provisions, its discussion demonstrates that primary weight was given to the $10,000 maximum fine provision. Regardless, the ICA clearly dispensed with consideration of the other factors set out in our case law. We therefore agree with the prosecution that the ICA's application of an erroneous analysis resulted in the improper determination that a violation of Rule 19–62–17 constitutes a serious offense giving rise to the right to a jury trial.

Accordingly, we explicitly overrule *Simeona* to the extent that it (1) articulates a petty/serious analysis that contradicts the analysis set out in our case law (of which *Lindsey, Nakata, Wilson,* and *O'Brien* are reflective) and (2) holds that a violation of Rule 19–62–17 triggers the state constitutional right to a jury trial.

### 3. Violation of Rule 19–62–17 does not constitute a constitutionally serious offense.

We now reach the dispositive question—whether a violation of Rule 19–62–17 constitutes a constitutionally serious offense, thereby entitling an accused to a jury trial—in accordance with the proper analytical framework recently reaffirmed in *Lindsey.* We hold that it does not.

As previously indicated, our established case law mandates that "[w]e analyze three factors to determine whether an offense is constitutionally petty or serious: (1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty." *Lindsey,* 77 Hawai'i at 163, 883 P.2d at 84 (citation omitted).

■ Moreover, in *Lindsey* we adopted the rule that, "if the maximum authorized term of imprisonment for a particular offense does not exceed thirty days, it is presumptively a petty offense to which the right to a jury trial does not attach." *Lindsey,* 77 Hawai'i at 165, 883 P.2d at 86. The presumption can be overcome "only in extraordinary cases." *Id.* Such a case arises when consideration of the other relevant factors—the treatment of the offense at common law, the gravity of the offense, and, under the authorized penalty factor, the possible statutory "mix of penalties" other than imprisonment—"unequivocally demonstrates that society demands that persons charged with the offense at issue be afforded the right to a jury trial." *Id.* Because HRS § 266–25 does not authorize the imposition of any imprisonment for the violation of harbor rules, this case falls within the parameters of the

rule adopted in *Lindsey*. We therefore proceed with our analysis under the presumption that a violation of Rule 19–62–17 is a petty offense to which the constitutional right to a jury trial does not attach.

Under the first relevant factor, we consider the " 'traditional treatment' of the offense and whether the offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury." *Lindsey*, 77 Hawai'i at 163, 883 P.2d at 84. Because we have no indication that mooring offenses were indictable at common law, this factor plays no role in our determination whether a violation of Rule 19–62–17 is constitutionally serious. *See Nakata*, 76 Hawai'i at 374 n. 20, 878 P.2d at 713 n. 20 (first factor inapplicable to petty/serious inquiry where statutory DUI not shown to have a correlative precursor at common law); *Wilson*, 75 Haw. at 74, 856 P.2d at 1244 (first factor irrelevant because DUI-license suspension offense not indictable at common law).

Under the second factor, gravity of the offense, "we consider whether an offense affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labelling the offense as constitutionally serious." *Lindsey*, 77 Hawai'i at 163, 883 P.2d at 84. As noted above, we have indicated that "the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense." *Id.* Prior to 1987, pursuant to HRS § 266–25—the omnibus penalty statute for harbor rule violations—the maximum authorized penalty for violation of any harbor rule promulgated by the Department of Transportation was a $1,000.00 fine for each offense and/or a two-year suspension of operating or mooring privileges in state waters. In 1987, however, the legislature amended HRS § 266–25 to provide for a maximum possible fine of $10,000 for each offense. We therefore look to the legislative history of the 1987 amendment to assess its impact on our determination regarding the gravity of the instant offense.

During deliberations on the proposed penalty range increase for harbor rule violations, the House Standing Committee reported as follows:

> This bill will provide the State Departments of Health and Transportation with the means to be better informed of potentially harmful discharges [of untreated sewage into State waters by interisland cruise vessels] and *the authority to assess fines more comparable to the severity and frequency of pollution infractions....* It is not the intent of your Committee to create additional pollution violations. Rather *the purpose of this bill is to establish stiffer deterrents and to clarify the polluter's obligation to report such incidents.*

Hse. Stand. Comm. Rep. No. 224, in 1987 House Journal, at 1196 (emphases added).

The Conference Committee issued the following similar statement:

> Your committee finds that *recent incidents involving the release of untreated sewage effluent from certain interisland cruise ships have uncovered various limitations in the State's ability to impose penalties which are comparable to the severity of those repeated infractions.* In addition to the damage they may cause to the environment, these discharges also pose potential hazards to human health and safety. *This bill ... provide[s] the State [D]epartments of Health and Transportation with the authority to impose stricter penalties for the discharge of pollutants into the State's waters.*

Conf. Comm. Rep. No. 23, in 1987 Senate Journal, at 820 (emphases added).

These statements clearly demonstrate that the legislature's concern over the serious threat to public health and safety posed by unlawful sewage disposal—not unlawful mooring—motivated the amendment of HRS § 266–25 to provide for higher maximum fines. Therefore, although the general penalty provisions of HRS § 266–25 apply to violations of "any rule made, adopted, and published by the department of transportation[,]" the maximum fine was raised to $10,000 specifically to deter pollution infractions. The ten-fold increase in the maximum fine thus had no effect on the legislature's, and therefore constructively society's, previously

held view of the gravity of the offense of unlawful mooring. Accordingly, we conclude that the offense does not "affect[ ] the public at large, reflect[ ] moral delinquency, or carr[y] a sufficient disgrace to require labelling the offense as constitutionally serious" at this stage in our analysis. *Lindsey*, 77 Hawai'i at 163, 883 P.2d at 84.

■ Under the third factor, we examine the authorized penalty for the offense. As previously mentioned, there is no possible prison term for violation of Rule 19–62–17.[3] We therefore consider the "possible additional statutory 'mix of penalties' that may attach to the offense." *Id.* Pursuant to HRS § 266–25, these are: (1) a maximum fine of $10,000; and (2) the deprivation of operating or mooring privileges in state waters for up to two years.

■ We considered the maximum fine authorized under HRS § 266–25 in our analysis, *supra*, of the gravity of the offense, and determined there that, in light of the legislative intent to deter pollution infractions, not mooring violations, the increase in the maximum fine from $1,000 to $10,000 for harbor rule violations does not weigh strongly against the presumption that a violation of Rule 19–62–17 is a petty offense. However, there being no apparent limitation restricting trial judges from imposing the maximum statutory fine for any violation of the harbor rules, we must further examine whether this possibility lends to Rule 19–62–17 the veneer of a serious offense.

We have expressed our willingness to look to federal case law as a guide in determining when the right to a jury trial attaches. *See Shak*, 51 Haw. at 615, 466 P.2d at 424. Particularly illustrative with regard to our analysis of the authorized penalty factor is *United States v. Soderna*, 82 F.3d 1370 (7th Cir.

1996), and its discussion of United States Supreme Court precedent.

The *Soderna* court looked at two United States Supreme Court cases—*Blanton* and *United States v. Nachtigal*, 507 U.S. 1, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993)—in assessing whether Soderna's offense, blockading an abortion clinic, in violation of the Freedom of Access to Clinic Entrances Act (FACE), was constitutionally serious for purposes of securing his right to a jury trial.

In *Blanton*, the Supreme Court held that a state statute, authorizing a maximum punishment for first time DUI offenders of six months' imprisonment, plus a $1,000 fine, plus loss of driving privileges for ninety days, plus mandatory attendance at an alcohol abuse center at the defendant's expense, constituted a petty offense. The *Nachtigal* Court held that a federal regulation, authorizing a maximum punishment for first time DUI offenders (in a national park) of six months' imprisonment plus a maximum fine of $5,000, also constituted a petty offense.

In *Nachtigal*, the Supreme Court stated that its holding in that case was "quite obviously controlled" by its decision in *Blanton*, despite the five-fold increase in the maximum allowable fine. *Nachtigal*, 507 U.S. at 3, 113 S.Ct. at 1073. The *Soderna* court highlighted the fact that the Supreme Court "attached no significance to the higher fine," 82 F.3d at 1378, and focused on the Supreme Court's remark that "this monetary penalty [of $5,000] 'cannot approximate in severity the loss of liberty that a prison term entails.' " *Soderna*, 82 F.3d at 1378(quoting *Nachtigal*, 507 U.S. at 5, 113 S.Ct. at 1074).

Relying on the letter and spirit of *Blanton* and *Nachtigal*, the *Soderna* court held that the maximum penalty authorized under FACE for a first offense—up to six months' imprisonment and a fine of up to $10,000—

---

**3.** We take this opportunity, however, to reiterate this court's placement of primary emphasis on the imprisonment aspect of the three-part test where applicable:

> Primary emphasis ... must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," but they cannot approximate in severity the loss of liberty that a prison term

entails. Indeed, *because incarceration is an "intrinsically different" form of punishment, ... it is the most powerful indication of whether an offense is "serious."*

*Nakata*, 76 Hawai'i at 368, 878 P.2d at 707 (emphasis in original) (quoting *Blanton v. City of North Las Vegas*, 489 U.S. 538, 542, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550 (1989) (citations omitted)).

did not render the underlying offense constitutionally serious. The court acknowledged that a particularly severe monetary penalty could convert a petty offense into a serious one, but determined that $10,000 did not approach the requisite level of severity:

> If the fine for a first-time [offense] were $1 million, it would be hard to resist the inference that the offense was serious rather than petty. [However, w]e need not decide where between $5,000 and $1 million the line should be drawn. It is enough that, in light of the reasoning of *Blanton* and *Nachtigal,* it cannot be drawn at $10,000.

*Soderna,* 82 F.3d at 1379. We agree with the *Soderna* court. The maximum penalty of $10,000 authorized under HRS § 266–25, particularly when considering that the statute authorizes no term of imprisonment, does not tend to move a violation of Rule 19–62–17 from the realm of a petty into that of a serious offense.[4]

We thus turn to the other component constituting part of the statutory "mix of penalties" under HRS § 266–25—suspension of operating or mooring privileges in state waters for up to two years—within the context of our petty/serious analysis. Ford challenges this provision of HRS § 266–25 in a different constitutional context, arguing that:

> No state can enact and enforce "Petalism" or a law that exiles or banishes a citizen of the United States from a portion of the United States.
>
> "Petalism" was a form of banishment in Ancient Syracuse. A person was exiled for up to five (5) years by a judgment written on a leaf from the olive tree.
>
> The owner ... who lives aboard his vessel and his vessel can be banished from Hawaiian waters for up to two (2) years. He and his vessel can be forced to survive on the ocean and try to survive the hazards of sea in all kinds of weather. The law banishes this citizen from the United States of America, because there is no

adjoining State to where he might flee. He and his vessel must face more than 2,000 miles of sea, with all of its hazards to life and limb before they might find a safe port. This punishment is an undisguised death penalty. It violates Amendment VIII of the U.S. Constitution, [as] it is cruel and unusual punishment. It also violates Article I, Section 12 [of the] Hawaii State Constitution.

We initially note that deprivation of vessel operating and mooring privileges is not a form of petalism or banishment because the individual is not being banished from the jurisdiction, but, rather, is only being deprived of a privilege within the jurisdiction in accord with the principles of due process. Regarding Ford's argument that deprivation of his privileges for up to two years would constitute cruel and unusual punishment, we conclude that it is without merit.

> The standard by which punishment is to be judged under the "cruel and unusual" punishment provisions of both the United States and Hawaii Constitutions is whether in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community.

*State v. Kumukau,* 71 Haw. 218, 226–27, 787 P.2d 682, 687 (1990) (quoting *State v. Freitas,* 61 Haw. 262, 267–68, 602 P.2d 914, 920 (1979)); *see also State v. Loa,* 83 Hawai'i 335, 352, 926 P.2d 1258, 1275 (1996), *reconsideration denied,* November 25, 1996. We do not believe that limited deprivation of vessel operating and mooring privileges for violation of administrative rules established to protect and maintain order on Hawai'i's waters would "shock the conscience of reasonable persons or [ ] outrage the moral sense of the community."

---

4. Ford indirectly contends that the aggregate of $20,000.00 in maximum authorized monetary penalties that he faced as a result of his two violations bolsters his right to a jury trial. This argument is without merit. *See Lewis v. United States,* —— U.S. ——, ——, 116 S.Ct. 2163, 2167,

135 L.Ed.2d 590 (1996) ("The fact that [an accused] was charged with two counts of a petty offense does not revise the legislative judgment as to the gravity of that particular offense, nor does it transform the petty offense into a serious one, to which the jury-trial right would apply.").

In *O'Brien*, 68 Haw. 38, 704 P.2d 883 (1985), we deemed petty a DUI-license suspension violation where a violator was subject to the suspension or revocation of his or her license for one year, a fine of up to $1,000.00, and imprisonment of up to sixty days. In *Nakata*, 76 Hawai'i 360, 878 P.2d 699 (1993), we held a first-offense DUI violation to be petty where a violator faced suspension of his or her license for ninety days, a fine of up to $1,000.00, compulsory rehabilitation and community service, and reimbursement for the cost of implementing the penalties. The Supreme Court in *Blanton* similarly held a DUI offense to be constitutionally petty where violators faced suspension of driving privileges for ninety days, a $1,000.00 fine, compulsory rehabilitation, and up to six months' imprisonment.

In light of these holdings, and mindful of our strongly held view that "[p]enalties such as probation or a fine may engender 'a significant infringement of personal freedom,' but they cannot approximate in severity the loss that liberty that a prison term entails," *Nakata*, 76 Hawai'i at 368, 878 P.2d at 707 (quoting *Blanton*, 489 U.S. at 542, 109 S.Ct. at 1292), we do not believe that unlawful mooring qualifies as one of the "extraordinary cases" where consideration of the mix of penalties, in conjunction with the other case law factors, "unequivocally demonstrates that society demands that persons charged with the offense at issue be afforded the right to a jury trial." *Lindsey*, 77 Hawai'i at 165, 883 P.2d at 86.

In summary, because there is no authorized term of imprisonment for violation of Rule 19–62–17, the mooring offense is presumptively a petty offense to which the right to a jury trial does not attach, and consideration of the other relevant factors fails to overcome this presumption. We therefore hold that Ford did not have a right to a jury trial.

Accordingly we also reverse the ICA's holding that the district court violated HRPP Rule 5(b)(3), mandating commitment of a defendant to circuit court where a defendant does not waive his right to a jury trial "in appropriate cases[.]" As Ford had no right to a jury trial, this was not an appropriate case.

### B. *HRPP Rule 10.1(b) Violation*

 HRPP Rule 10.1(b) provides that, "[u]pon the initial appearance of the defendant before the court, the court shall ... inform him that he is not required to make a statement and that any statement made by him may be used against him[.]" Insofar as the record contains no indication that the district court advised Ford of his rights in accordance with this rule, we agree with the ICA that "the district court failed to comply with HRPP Rule 10.1(b)." HRPP Rule 10.1(b) codifies the constitutional right against self-incrimination. U.S. Const. art. V ("No person ... shall be compelled in any Criminal Case to be a witness against himself"); Haw. Const. art. I § 10 (same). Where error implicates an accused's constitutional rights, "an appellate court must reverse a resulting conviction unless it can conscientiously conclude that[,] 'in the setting of the particular case[,] the error is so unimportant and insignificant that it may be deemed harmless.'" *State v. Ganal*, 81 Hawai'i 358, 376, 917 P.2d 370, 388 (1996) (citations, brackets, and ellipses omitted); HRPP Rule 52. We cannot so conclude in the setting of this case and, therefore, must vacate the judgment of the district court.

### III. *CONCLUSION*

Based on the foregoing, we explicitly overrule *Simeona* to the extent that it (1) articulates a petty/serious analysis that contradicts the analysis set out in this court's case law cited above and (2) holds that a violation of Rule 19–62–17 triggers the state constitutional right to a jury trial. We also hold that: (1) the penalties authorized under HRS § 266–25 are criminal penalties; (2) the application of the correct petty/serious analysis demonstrates that a violation of Rule 19–62–17 does not constitute a constitutionally serious offense; (3) because Ford was not charged with a constitutionally serious offense and therefore had no right to a jury trial, the district court did not err in failing to commit Ford to the circuit court for jury trial pursuant to HRPP Rule 5(b)(3); and (4)

the district court committed reversible error in failing to advise Ford of his right to remain silent at trial in violation of HRPP Rule 10.1(b). Accordingly, we reverse that portion of the ICA opinion holding that Ford is entitled to a jury trial and that the district court violated HRPP Rule 5(b)(3). We affirm that portion of the ICA opinion holding that the district court failed to comply with HRPP Rule 10.1(b). Consequently, we vacate the judgment of the district court and remand this case to the district court for a new trial without a jury.