Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000063
30-SEP-2016
12:31 PM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


STATE OF HAWAI'I, Plaintiff-Appellant,
v.
JOHN P. DUNBAR, JR., Defendant-Appellee


NO. CAAP-15-0000063


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 14-1-0694(4))

SEPTEMBER 30, 2016

NAKAMURA, CHIEF JUDGE, LEONARD and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Defendant-Appellee John P. Dunbar, Jr. (Dunbar) was charged in this case with Failure to Provide Specimen For Forensic Identification, in violation of Hawaii Revised Statutes (HRS) § 844D-31(a) (2014) and § 844D-111(a) (2014).[1] Plaintiff-

---

[1] HRS § 844D-31(a) provides:

> **§844D-31 Offenders subject to collection.** (a) Any person, except for any juvenile, who is convicted of, or pleads guilty or no contest to, any felony offense, even if the plea is deferred, or is found not guilty by reason of insanity of any felony offense, shall provide buccal swab samples and print impressions of each hand, and, if required by the collecting agency's rules or internal regulations, blood specimens, required for law enforcement identification analysis.

(continued...)

Appellant State of Hawaiʻi (State) asserts that Dunbar, having been convicted of a felony offense in 2005, and after having received written notice in 2014 from the collecting agency of his obligation to provide a buccal swab sample,[2] failed in 2014 to provide a buccal swab for the collection of his deoxyribonucleic acid (DNA), as required under HRS Chapter 844D.[3]

The Circuit Court of the Second Circuit (circuit court)[4] dismissed the charge against Dunbar in this case by way of its Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Dismiss (Order Granting Motion to Dismiss), filed on February 3, 2015. The circuit court ruled that Dunbar had "successfully completed probation and once [Dunbar's] probationary period terminated, [Dunbar] was no longer subject to collection [of his DNA] under HRS Section 844D-35." The circuit court further ruled that, given the provisions within HRS Chapter

---

[1](...continued)
At the time of the alleged offense in this case, HRS § 844D-111 provided:

> **§844D-111 Refusal or failure to provide specimen for forensic identification.** (a) A person commits the offense of refusal or failure to provide specimen for forensic identification if the person is required by this chapter to provide any blood specimens, buccal swab samples, or print impressions and intentionally or knowingly refuses or fails to provide any of the required blood specimens, buccal swab samples, or print impressions after the person has received written notice from the department, the department of public safety, any law enforcement personnel, or officer of the court that the person is required to provide each and every one of the blood specimens, buccal swab samples, and print impressions required by this chapter.
>     (b) Any person who negligently or recklessly fails to comply with this section shall be guilty of a misdemeanor.

[2] HRS § 844D-1 (2014) defines "buccal swab" as "a swab used to collect buccal cells from the mouth cavity by wiping the interior surface of the cheek."

[3] The Amended Complaint alleges that Dunbar failed to provide a blood sample, buccal swab sample and/or hand print impressions. However, an affidavit attached to the initial Complaint only indicates that Dunbar was requested to provide a DNA buccal swab sample. Further, the State's briefs to this court only address Dunbar's obligation to provide a buccal swab sample.

[4] The Honorable Richard T. Bissen, Jr. presided, except where otherwise indicated.

2

844D that describe categories of persons from whom DNA samples could be collected, the Legislature intended to limit collection to the categories of persons described.

On appeal, the State challenges the circuit court's dismissal of the charge and its ruling that the State could no longer obtain Dunbar's buccal swab sample in 2014, after he had been discharged from probation for his felony conviction. HRS Chapter 844D became effective on July 1, 2005, and the parties do not dispute that relevant provisions within Chapter 844D Part III are retroactive. Thus, Dunbar does not contest that he was subject to collection of his DNA samples *while he was on probation* for his 2005 felony conviction, even though his conviction was entered on June 29, 2005, prior to the effective date of HRS Chapter 844D. However, the parties dispute whether the State could still collect Dunbar's DNA buccal swab samples in 2014, *after* he had been discharged from probation for his 2005 felony offense.

Under the circumstances of this case and the relevant provisions in HRS Chapter 844D Part III, we hold that Dunbar was no longer required to provide a buccal swab sample after he had been discharged from probation for his felony offense.[5] We therefore affirm the circuit court's dismissal of the charge against Dunbar in this case based on the reasons set forth below.

## I.  Background

On June 29, 2005, in a previous case before the circuit court, State v. Dunbar, Criminal No. 04-1-0450(1), a Judgment was entered convicting Dunbar of Attempted Escape in the Second Degree, in violation of HRS § 710-1021 (2014), a class C felony.[6] Dunbar was sentenced to probation for a term of five (5) years.

---

[5] Our holding is limited to the circumstances of this case. We make no comment on the possibility that under HRS Chapter 844D Part III, Dunbar could become subject to collection of buccal swab samples, hand print impressions and/or blood specimens in future circumstances based on his 2005 felony offense.

[6] The Honorable Joel E. August presided.

3

A few days later, on July 1, 2005, HRS Chapter 844D became effective. Within HRS Chapter 844D Part III ("Offenders Subject to Collection of Specimens or Samples, or Print Impressions"),[7] HRS § 844D-31(a) provides that:

> Any person, except for any juvenile, who is convicted of, or pleads guilty or no contest to, any felony offense, even if the plea is deferred, or is found not guilty by reason of insanity of any felony offense, shall provide buccal swab samples and print impressions of each hand, and, if required by the collecting agency's rules or internal regulations, blood specimens, required for law enforcement identification analysis.

(Emphasis added.) Further, HRS § 844D-41 (2014) provides for the retroactive application of specified provisions within Part III and identifies the provisions under which collection shall occur, stating in relevant part:

> Sections 844D-31, 844D-33, and 844D-34 to 844D-37 shall have retroactive application. Collection shall occur pursuant to sections 844D-34 to 844D-38 regardless of when the crime charged or committed became a qualifying offense pursuant to this chapter, and regardless of when the person was convicted of the qualifying offense described in section 844D-31(a) . . . .

(Emphasis added.) In turn, HRS § 844D-35 (2014) addresses the collection of, *inter alia*, buccal swab samples where "[t]he person is on probation or parole[.]" As discussed *infra*, the interpretation of HRS § 844D-35 is at the core of this case.

On March 18, 2008, approximately two years and nine months after Dunbar's felony judgment of conviction was entered on June 29, 2005, in Criminal No. 04-1-0450(1), the circuit court in that case granted Dunbar's motion for early termination of probation. It is undisputed that Dunbar was then formally discharged from his probationary sentence by way of an order entered on April 11, 2008.

In February of 2014, almost six years after Dunbar had been discharged from probation in Criminal No. 04-1-0450(1), the State, through the Department of the Attorney General, initiated contact with Dunbar to obtain his buccal swab sample. Due to

---

[7] HRS Chapter 844D Part III consists of §§ 844D-31 through 844D-41.

Dunbar's failure to provide the requested sample, the State filed its initial Complaint in this case on August 22, 2014, in the District Court of the Second Circuit. Dunbar requested a jury trial and thus the State filed a Complaint in circuit court on September 26, 2014. The State filed an Amended Complaint on November 12, 2014, to make a technical amendment. The Amended Complaint asserts, in relevant part, that "on or about the period of February 15, 2014, through and including March 21, 2014," Dunbar "having been convicted of any felony offense" intentionally or knowingly failed to provide, *inter alia,* buccal swab samples "after receiving written notice by the collecting agency[.]"

On November 17, 2014, Dunbar filed a Motion to Dismiss claiming the State had not requested his DNA sample while he was on probation and that he was no longer required to provide a DNA sample because he had completed his probation. On February 3, 2015, the circuit court filed the Order Granting Motion to Dismiss.

On February 4, 2015, the State timely filed its Notice of Appeal.

## II. Standards of Review

Our review in this case is *de novo,* based on interpreting provisions in HRS Chapter 844D Part III.

> The interpretation of a statute is a question of law that we review *de novo.* Similarly, a trial court's conclusions of law are reviewable *de novo* under the right/wrong standard. Under the *de novo* standard, this court must examine the facts and answer the pertinent question of law without being required to give any weight or deference to the trial court's answer to the question.

State v. Kelekolio, 94 Hawaiʻi 354, 356, 14 P.3d 364, 366 (App. 2000) (citations omitted).

## III. Discussion

The State contends that the circuit court erred when it entered Conclusions of Law (COLs) 9, 10, 11, 13, and 14, upon which it based its ruling that Dunbar was not required to provide a buccal swab sample under the circumstances of this case.

5

The circuit court's COLs 9-14 state:

> 9. Pursuant to HRS Sections 844D-35 and 844D-41, Defendant was no longer subject to collection under HRS Section 844D-35.

> 10. Defendant successfully completed probation and once Defendant's probationary period terminated, Defendant was no longer subject to collection under HRS Section 844D-35.

> 11. The creation and description of the various categories of persons from whom DNA samples [sic] in HRS Sections 844D-34 to 844D-37 suggests the Hawai'i State Legislature intended to limit collection to the categories of persons described. If such limits were not intended, there would have been no reason for the Hawai'i State Legislature to have created and described the various categories.

> 12. As evidenced in drafts of the bill that was to become HRS Chapter 844D, the Hawai'i State Legislature contemplated a category of collection from persons such as the Defendant, i.e., convicted felons who were no longer incarcerated, and who were no longer on probation, parole or other release.[8]

> 13. Omission of such a category from the enacted HRS Chapter 844D suggests that the Hawai'i State Legislature did not intend to collect DNA samples from convicted felons who were no longer incarcerated, and who were no longer on probation, parole or other release.

> 14. Therefore, since Defendant was no longer on probation, not incarcerated, not on parole, not on other release, not a parole violator, and had not been returned to custody, the law does not provide for the collection of Defendant's DNA sample.

The precise issue before this court is whether Dunbar, who had been subject to collection of his DNA sample as a felony offender under the retroactive provisions in HRS Chapter 844D Part III, was still required to provide a DNA sample when the State did not seek to obtain a sample until after his probation for the felony offense had been discharged by the court.[9] In resolving this issue, we must interpret and apply provisions within HRS Chapter 844D Part III.

First, the fundamental starting point for statutory

---

[8] The State does not challenge COL 12.

[9] To the extent that the circuit court's conclusions of law, particularly in COL 13, address issues other than the one in this case, we do not reach or comment upon those issues.

interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity‛ exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

Kelekolio, 94 Hawaiʻi at 356-57, 14 P.3d at 366-67 (citation omitted, block format altered). Furthermore,

It is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole. In re Castro, 44 Haw. 455, 458, 355 P.2d 46, 48 (1960). Statutes should be interpreted according to the intent and meaning, and not always according to the letter, and every part thereof must be viewed in connection with the whole so as to make all parts harmonize, if practicable, and give a sensible and intelligent effect to each. Id.

State v. Davis, 63 Haw. 191, 196, 624 P.2d 376, 380 (1981).

## A. HRS § 844D-41 (Retroactive Application)

The State's first contention is that under HRS § 844D-41, it is plain, clear and unambiguous that DNA collection requirements apply retroactively.[10] The circuit court's conclusions do not contradict this point. Indeed, Dunbar does

---

[10]  HRS § 844D-41 provides in full:

[§844D-41] Retroactive application. Sections 844D-31, 844D-33, and 844D-34 to 844D-37 shall have retroactive application. Collection shall occur pursuant to sections 844D-34 to 844D-38 regardless of when the crime charged or committed became a qualifying offense pursuant to this chapter, and regardless of when the person was convicted of the qualifying offense described in section 844D-31(a) or a similar crime under the laws of the United States or any other state, or pursuant to the United States Code of Military Justice, for commission of a qualifying offense described in section 844D-31(a) or a similar crime under the laws of the United States or any other state.

not contest that, as expressly stated in HRS § 844D-41, relevant provisions in Part III have retroactive application. Thus, even though he was convicted of a felony offense prior to the effective date of HRS Chapter 844D, Dunbar has no quarrel with the State that, while he was on probation for his felony offense, he was subject to collection of his DNA via a buccal swab sample. The State's argument based on HRS § 844D-41 does not address the key issue in dispute, which is whether the State could collect the buccal swab sample even *after* Dunbar had been discharged from probation for the 2005 felony.

**B. HRS Chapter 844D Part III does not provide for the collection of Dunbar's DNA after his release from probation**

**1. Relevant Statutory Provisions**

As noted by the circuit court during the hearing on Dunbar's motion to dismiss, some provisions in Chapter 844D Part III address who is "subject to" collection of their buccal swab samples, hand print impressions, and possibly blood specimens. See HRS §§ 844D-31 and 844D-32 (2014). Other provisions, however, address the collection process and requirements related to specified categories of individuals. See HRS §§ 844D-34 through 844D-37 (2014).

As discussed above, there is no dispute that because of his 2005 felony offense, Dunbar was generally "subject to" collection under HRS § 844D-31(a). HRS § 844D-31 provides in full:

> **§844D-31 Offenders subject to collection.** (a) Any person, except for any juvenile, who is convicted of, or pleads guilty or no contest to, any felony offense, even if the plea is deferred, or is found not guilty by reason of insanity of any felony offense, shall provide buccal swab samples and print impressions of each hand, and, if required by the collecting agency's rules or internal regulations, blood specimens, required for law enforcement identification analysis.
>
> (b) Testing pursuant to this section shall begin immediately for all persons who have been convicted of murder in any degree or any felony offense defined in chapter 846E and all persons convicted of any felony offense who are confined in a correctional facility or other detention facility, including private correctional facilities, but shall not begin for other persons until thirty days after statewide publication of notice by the

attorney general pursuant to section 1-28.5.

(c) The attorney general's notice, pursuant to subsection (b), may be provided in stages, beginning with notice of the beginning of testing of all persons not already mandated to be tested by subsection (b) who have been convicted of a class A felony, then notice of the beginning of testing of all persons not already mandated to be tested by subsection (b) who have been convicted of a class B felony, and finally notice of the beginning of testing of all persons not already mandated to be tested by subsection (b) who have been convicted of a class C felony.

(d) Nothing in this section shall be construed as prohibiting collection and analysis of specimens, samples, or print impressions as a condition of a plea for a non-qualifying offense.

(Emphasis added.) A plain reading of HRS § 844D-31(a) requires that any person, except for a juvenile, who is convicted of any felony or who is found not guilty by reason of insanity of any felony must provide, *inter alia*, buccal swab samples. Both parties agree that Dunbar falls within this section of Chapter 844D because he was convicted in June 2005 of a class C felony and HRS § 844D-41 provides for the retroactive application of HRS § 844D-31.

In turn, certain sections in Chapter 844D Part III, including HRS §§ 844D-34 to 844D-37,[11] address more specifically the process for collection of, *inter alia*, buccal swabs from specified categories of convicted felons. Indeed, in addressing the retroactive provisions, HRS § 844D-41 provides that "[c]ollection shall occur pursuant to sections 844D-34 to 844D-38 regardless of when the crime charged or committed became a qualifying offense pursuant to this chapter, and regardless of when the person was convicted of the qualifying offense described in section 844D-31(a)[.]" (Emphasis added.)[12]

---

[11] These sections are entitled: HRS § 844D-34 "Collection from persons confined or in custody after conviction or adjudication"; HRS § 844D-35 "Collection from persons on probation, parole, or other release"; HRS § 844D-36 "Collection from parole violators and others returned to custody"; HRS § 844D-37 "Collection from persons accepted into Hawaii from other jurisdictions."

[12] Other provisions within Chapter 844D Part III also provide for testing, collection and/or analysis in other specified circumstances. See HRS §§ 844D-31(b), 844D-33, 844D-39, 844D-40. Moreover, HRS § 844D-38 addresses replacement of specimens, samples, or print impressions that are not usable.

Both parties recognize that HRS § 844D-35 is the relevant collection provision related to Dunbar's circumstances. HRS § 844D-35 provides:

> [§844D-35] **Collection from persons on probation, parole, or other release.** (a) A person, except for any juvenile, shall provide buccal swab samples and print impressions and, if required pursuant to this chapter, blood specimens if:
> (1) The person is on probation or parole for any felony offense, whether or not that crime or offense is one set forth in section 844D-31(a);
> (2) The person has a record of any past or present conviction of a qualifying offense described in section 844D-31 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this State, would have been punishable as an offense described in section 844D-31; **and**
> (3) The person's blood specimens or buccal swab samples, and print impressions authorized by this chapter are not in the possession of the department or have not been recorded as part of the state DNA database and data bank identification program.
> (b) The person shall have any required specimens, samples, or print impressions collected within twenty working days of being notified by the court, or a law enforcement agency or other entity authorized by the department. The specimens, samples, or print impressions shall be collected in accordance with section 844D-21 at a correctional facility or a state, county, private, or other facility designated for this collection.

(Emphasis added.)

Considering first and foremost the actual language that was adopted, as we must, HRS § 844D-35 appears to provide that any person, except for a juvenile, must provide, *inter alia*, buccal swab samples if (1) the person is on probation or parole for any felony offense; and (2) the person has a record of any past or present conviction of a qualifying offense under HRS § 844D-31 (or a conviction or adjudication of any offense in another court that would qualify under HRS § 844D-31 if committed or attempted in Hawaiʻi); and (3) the person's, *inter alia*, buccal swab samples are not in the possession of the police department or have not been recorded in the State DNA database and data bank. Further, under section (b), the subject individual is required to provide their, *inter alia*, samples

"within twenty working days of being notified by the court, or a law enforcement agency or other entity authorized by the [Honolulu Police Department]." Under this reading of HRS § 844D-35, the statute would not apply to Dunbar in 2014, when he was notified to provide a buccal swab sample, because although he had a past conviction of a qualifying offense under HRS § 844D-31 and his, *inter alia*, buccal swab samples were apparently not in the possession of the police department or in the State database, he was no longer on probation or parole by the time the State sought his samples.

The State argues that, because legislative history indicates that the Legislature intended DNA samples to be collected from all convicted felons, we must construe HRS § 844D-35 in such a way that Dunbar was required to provide his buccal swab sample even after he completed his probation. In a sense, the State suggests that the legislative history dictates an interpretation that appears at odds with the actual language adopted. In this regard, the State points to the phrase "other release" in the title of HRS § 844D-35, argues that we should apply the plain meaning of "release" under Black's Law Dictionary[13] and thus that HRS § 844D-35 must apply to convicted felons discharged from their sentences. Notably, however, there is nothing in the text of HRS § 844D-35 that refers to "other release" or any type of discharge from a criminal sentence. The State further contends that the only logical way to interpret HRS § 844D-35 is by adding the word "or" between subsections (a)(1) and (a)(2) to avoid an absurd result, alleging that (a)(1) and (a)(2) are redundant and that it is the only way to possibly account for "other release" in the title.[14] According to the

---

[13] The State urges that under Black's Law Dictionary, the definition of "release" includes "being freed from restraint or confinement" or "[a] document giving formal discharge from custody[.]"

[14] Although the State has consistently claimed the right to obtain Dunbar's DNA sample in this case, the State's arguments on appeal are somewhat different than what it argued to the circuit court.

State, if the word "or" is added between subsections (a)(1) and (a)(2), "the effect [would be] that a person qualifies to submit DNA samples under HRS §§ 844D-35(a)(1) and (3) **OR** HRS §§ 844D-35(a)(2) and (3)." As discussed below, we do not agree with the State's assertions or its construction of the statute.

The State's contentions -- relying heavily on legislative history, pointing to the title of the statute, and arguing that the word "or" should be added to the text of the statute -- amount to assertions that HRS § 844D-35 is ambiguous. We agree that at least parts of HRS § 844D-35 appear to be ambiguous. As the State points out, subsections (a)(1) and (a)(2) seem redundant because a person who "is on probation or parole for any felony offense" would appear to have "a record of any past or present conviction of a qualifying offense described in section 844D-31[.]" On its face, it does not appear that this ambiguity is particularly material to the issue presented in this appeal. However, given the State's arguments and the apparent ambiguity in HRS § 844D-35, we consider matters beyond the language of the statute to assist us in construing the statute and to confirm our interpretation of its language. See Tauese v. State Dep't of Labor & Indus. Relations, 113 Hawai'i 1, 37, 147 P.3d 785, 821 (2006)(regarding use of an ambiguous statute's title to aid in construing the statute); State v. Young, 107 Hawai'i 36, 39, 109 P.3d 677, 680 (2005)("In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning[,]" and noting that courts may utilize "legislative history as an interpretive tool.")(citations, internal quotation marks and brackets omitted); State v. Entrekin, 98 Hawai'i 221, 227, 47 P.3d 336, 342 (2002)(noting the use of legislative history to confirm the court's view in interpreting a statute).

## 2. The Title of HRS § 844D-35

The full title for HRS § 844D-35 is "Collection from persons on probation, parole, or other release." We do not view the phrase "other release" in the title as *creating* an ambiguity in the statute. As expressed in <u>Advertiser Publishing Co. v. Fase</u>, 43 Haw. 154 (Haw. Terr. 1959),

> the court may look to the title of a statute when construing an ambiguous statute or construing an obscure passage or expression therein. <u>But the title of an act cannot limit the plain meaning of its text</u>, although it may be looked to to aid in construction in cases of doubt.

<u>Id.</u> at 164 (emphasis added)(citation and internal quotation marks omitted). We thus consider the title of HRS § 844D-35 because the language in the text appears to be ambiguous. "Where a statute is ambiguous, its title may be referred to as an aid in construing the statute." <u>Tauese</u>, 113 Hawaiʻi at 37, 147 P.3d at 821 (quoting <u>Honolulu Star Bulletin, Ltd. v. Burns</u>, 50 Haw. 603, 606, 446 P.2d 171, 173 (1968)).

Even considering the title of HRS § 844D-35, however, it does not establish that Dunbar was required to provide his DNA sample under the circumstances of this case. Although the title references "other release," there is nothing in the text of the statute that is related to any release other than when "the person <u>is</u> on probation or parole for any felony offense." HRS § 844D-35(a)(1) (emphasis added). All things considered, we view the language of the text, as well as the context of other provisions and the legislative history discussed *infra*, to be of greater significance than the title of HRS § 844D-35 in aiding us to construe the statute.

## 3. Context of HRS Chapter 844D Part III

The context of the other provisions adopted in Chapter 844D Part III provides strong support for our reading of HRS § 844D-35. As the circuit court emphasized, HRS § 844D-35 is one of several provisions that each address the collection process from individuals in varying circumstances. <u>See</u> HRS §§ 844D-33 through 844D-40. This significantly cuts against the

State's contention that the Legislature intended to allow collection of DNA samples from any felon at essentially any time. Moreover, HRS § 844D-34[15] and § 844D-36[16] are of

---

[15] HRS § 844D-34 provides:

> **[§844D-34] Collection from persons confined or in custody after conviction or adjudication.** A person, except for any juvenile, shall provide buccal swab samples and print impressions and, if required by the collecting agency's rules or internal regulations, blood specimens, immediately at intake, or during the prison reception center process, or as soon as administratively practicable at the appropriate custodial or receiving institution or program if:
>> (1) The person is <u>imprisoned or confined or placed</u> in a state correctional facility, a county correctional facility, the department of public safety, a residential treatment program, or any state, county, private, or other facility <u>after a conviction of any felony offense</u>;
>> (2) The person has a record of any past or present conviction of a qualifying offense described in section 844D-31 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense, that, if committed or attempted in this State, would have been punishable as an offense described in section 844D-31; and
>> (3) The person's blood specimens or buccal swab samples, and print impressions authorized by this chapter are not in the possession of the department or have not been recorded as part of the state DNA database and data bank identification program.

(Emphasis added.)

[16] HRS § 844D-36 provides:

> **[§844D-36] Collection from parole violators and others returned to custody.** A person, except for any juvenile, shall provide buccal swab samples and print impressions and, if required by the collecting agency's rules or internal regulations, blood specimens or other biological samples, at a state correctional or other receiving institution, if:
>> (1) The <u>person has been released</u> on parole, furlough, or other release <u>for any offense or crime</u>, whether or not set forth in section 844D-31, <u>and is returned to a state correctional or other institution</u> for a violation of a condition of the person's parole, furlough, or other release, or for any other reason;
>> (2) The person has a record of any past or present conviction of a qualifying offense described in section 844D-31 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military

(continued...)

14

particular note because these provisions are structured in a very similar manner to HRS § 844D-35, they likewise delineate circumstances when an individual is under the supervision of the criminal justice system, and they establish when collection is authorized. All three statutory provisions start with a subparagraph that addresses different circumstances: a person is imprisoned, confined or placed in a facility after conviction of any felony offense; a person is on probation or parole for any felony offense; a person has been released for any offense or crime and has been returned to a correctional or other institution. See HRS § 844D-34(1); § 844D-35(a)(1); § 844D-36(1). Each statute then contains almost identical subparagraphs that follow. See HRS § 844D-34(2) and (3); § 844D-35(a)(2) and (a)(3); § 844D-36(2) and (3). Given the similar structure of these provisions, and making the assumption *arguendo* that we would even consider adding language to a statute, the State's contention that the word "or" must be added between subparagraph (a)(1) and (a)(2) in HRS § 844D-35 would need to make sense in the context of HRS § 844D-34 and § 844D-36 as well. It clearly does not make sense as to HRS § 844D-36, because a person released "for <u>any</u> offense or crime" would not necessarily have "a record of any past or present conviction of a qualifying offense described in section 844D-31[.]" See HRS § 844D-36(1) and (2) (emphasis added). In short, although HRS §§ 844D-34 and 844D-35 refer to "any <u>felony</u> offense" in the respective initial subparagraph, the initial subparagraph in § 844D-36 refers to

---

[16](...continued)

   court, of any offense that, if committed or attempted in this State, would have been punishable as an offense described in section 844D-31; and

(3) The person's blood specimens or buccal swab samples, and print impressions authorized by this chapter are not in the possession of the department's DNA laboratory or have not been recorded as part of the state DNA database and data bank identification program.

(Emphasis added.)

15

"any offense or crime." Thus, in addition to being inconsistent with a plain reading of HRS § 844D-35, the State's urging to add language to essentially restructure HRS § 844D-35 would be inconsistent in the context of other relevant provisions in HRS Chapter 844D Part III.

### 4. Legislative History

The legislative history further supports our reading of HRS Chapter 844D Part III.[17] We agree with the State that the legislative history for HRS Chapter 844D Part III indicates an intent to cover all felons, but the legislative history does not reveal an intent to allow unbridled collection of DNA samples at any time or under any circumstances. Rather, the legislative history indicates an intent to address not only the persons covered by the law, but to also address the collection process. Further, the legislative history shows that the Legislature considered two versions of a provision, denominated as section 34, that would have generally allowed collection from all convicted felons after specified notice, but the provision was omitted from the final version of the bill.

Regarding the purpose for HRS Chapter 844D Part III, the State points to committee reports stating that the purpose was to "[r]equire DNA testing of all felons," that it would "establish a statewide DNA database and databank identification program . . . that will include the DNA of all convicted felons[,]" and that "[t]he purpose of this bill is to enhance law

_____

[17] HRS Chapter 844D was adopted as Act 112 in 2005, which derives from the passage of House Bill No. 1733. See 2005 Haw. Sess. Laws, Reg. Sess., Act 112, § 1 at 275-94; H.B. 1733, H.D.2, S.D.2, C.D.1, 23rd Leg., Reg. Sess. (2005). House Bill No. 1733 went through several versions in both the House and Senate before its eventual adoption, including at different times incorporating a version of House Bill No. 590 and at other times incorporating a version of Senate Bill No. 470, each of which dealt with the collection of DNA samples from convicted felons. See H. Stand. Comm. Rep. No. 648, in 2005 House Journal, at 1294-95; H.B. No. 1733, H.D.1; S. Stand. Comm. Rep. No. 1273, in 2005 Senate Journal, at 1634-35; H.B. No. 1733, H.D.2, S.D.1. Ultimately, after being considered in Conference Committee, House Bill No. 1733 was amended to revert back to the H.D.2 version of the bill, which had incorporated a version of House Bill No. 590. See Conf. Comm. Rep. No. 184, in 2005 House Journal, at 1827, 2005 Senate Journal, at 1089.

enforcement tools by establishing a statewide [DNA] database and data bank identification program for all convicted felons." See H. Stand. Comm. Rep. No. 648, in 2005 House Journal, at 1294; H. Stand. Comm. Rep. No. 956, in 2005 House Journal, at 1405; S. Stand. Comm. Rep. No. 1273, in 2005 Senate Journal, at 1634; S. Stand. Comm. Rep. No. 1534, in 2005 Senate Journal, at 1753; Conf. Comm. Rep. No. 184, in 2005 House Journal, at 1826-27, 2005 Senate Journal, at 1088-89.

The committee reports do reflect the important purposes of the bill, as noted by the State. However, these same reports also state that one of the purposes of the bill was to set out the procedures for collection of DNA samples. For example, House Standing Committee Report No. 648, House Standing Committee Report No. 956, and the final Conference Committee Report No. 184 state that the bill would both "(1) [r]equire DNA testing of all felons" and "(2) [p]rovide procedures and duties for the collection and testing of DNA samples[.]" See H. Stand. Comm. Rep. No. 648, in 2005 House Journal, at 1294; H. Stand. Comm. Rep. No. 956, in 2005 House Journal, at 1405; Conf. Comm. Rep. No. 184, in 2005 House Journal, at 1827, 2005 Senate Journal, at 1089 (emphasis added). In the Senate, Standing Committee Report No. 1273 states one purpose of the bill was that it "[e]stablishes procedures and processes relating to the collection, analysis, and storage of blood specimens, buccal swab samples, and fingerprint impressions[.]" See S. Stand. Comm. Rep. No. 1273, in 2005 Senate Journal, at 1635 (emphasis added); see also S. Stand. Comm. Rep. No. 1534, in 2005 Senate Journal, at 1753.

Moreover, we agree that there were strong statements by legislators in favor of expanding DNA sampling from all convicted felons (and not just from sex offenders or violent offenders as the law then provided). However, the statements cited by the State do not address the issue of how or when the DNA samples should be collected.

It is also significant that, as referenced by the circuit court in COL 12, there were versions of House Bill No. 1733 -- the H.D.2 S.D.1 and H.D.2 S.D.2 versions -- that included a provision denominated as section 34, which would have allowed for collection of Dunbar's DNA sample in the circumstances of this case, but the provision was ultimately omitted from the final version of the bill. The omitted provision required that, after statewide publication of notice by the Attorney General, qualifying individuals were to provide their, *inter alia*, DNA samples within thirty days. This provision did not qualify collection based on whether the individuals were incarcerated, on probation, on parole, or under any other supervision by the State. In House Bill 1733 H.D.2 S.D.2, section 34 provided:

> **§ -34 Blood specimens, buccal swab samples and print impressions required by this chapter for present and past convictions for felony offenses.** (a) Blood specimens, buccal swab samples, and print impressions shall be collected from every person convicted of a felony offense specified in section -31. Each person convicted of a felony offense shall provide the blood specimen, buccal swab sample, and print impressions within thirty days after the statewide publication of notice by the attorney general as provided in section -31.
> (b) If, subsequent to the effective date of this chapter, a person becomes subject to the requirements of this chapter and did not have blood specimens, buccal swab samples, and print impressions taken immediately following the previous felony conviction and the person is not confined or incarcerated, the court shall order the person to report within five calendar days to a correctional facility or a state, county, private, or other designated facility to provide the required blood specimens, buccal swab samples, and print impressions in accordance with this chapter.

(Emphasis added.) The omission of this provision (and its earlier counterpart in the H.D.2 S.D.1 version), shows that the Legislature considered, but ultimately decided to omit, a provision that would have allowed for the collection of, *inter alia*, a buccal swab sample from every person convicted of a felony offense, regardless of whether the individual was under any supervision of the State at the time. The omission of the above provision, especially in conjunction with the language actually adopted in HRS § 844D-35(a), supports Dunbar's arguments in this case.

18

Contrary to the State's contention, the legislative history does not support reading HRS § 844D-35 to apply to Dunbar after his probation for the felony offense had been discharged.

### 5. 2015 Proposed Legislation

Finally, in support of its arguments, the State points to proposed amendments to HRS § 844D-35 in 2015 that were not adopted. The State argues that the 2015 proposed legislation clarifies the legislative intent for HRS § 844D-35. We do not agree with the State's contention.

In the 2015 legislative session, Senate Bill No. 211 originally contained the following proposed amendments to HRS § 844D-35:[18]

> "[┼]§844D-35[┼] **Collection from persons on probation, parole, or other release.** (a) A person, except for any juvenile, shall provide buccal swab samples and print impressions and, if required pursuant to this chapter, blood specimens if:
> (1) The person is on probation [or], parole, or other release, including final unconditional release upon satisfaction of the person's criminal sentence, for any [felony] criminal offense, whether or not [that crime or] the offense is one set forth in section 844D-31(a)[."]

A report by the Senate Committee on Judiciary and Labor for Senate Bill No. 211 states that the purpose of these proposed amendments to HRS § 844D-35 was to "[s]pecify the requirements of DNA sample collection from criminal offenders that are released on parole, probation, or other release[.]" S. Stand. Comm. Rep. No. 662, in 2015 Senate Journal, at 1096. The Committee report further states, however, that these proposed amendments were being deleted from the bill "because the clarification under [HRS § 844D-35] is not necessary[.]" Id. at 1097. Thus, HRS § 844D-35 was left in its original form, as passed ten years previously in 2005.

---

[18] Senate Bill No. 211 also proposed amendments to HRS § 844D-111 clarifying the offenses for the refusal to provide required specimens for forensic identification. No amendments were adopted for HRS § 844D-35, but amendments were adopted for HRS § 844D-111. See 2015 Haw. Sess. Laws Act 193, § 1 at 586-87. The 2015 amendments to HRS § 844D-111, effective as of July 1, 2015, are not relevant to this case.

With regard to the use of subsequent legislation in interpreting statutes, "[t]here are no principles of construction which prevent the utilization by the courts of subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute, and it is very common for a court, in construing a statute, to refer to subsequent legislation as impliedly confirming the view which the court has decided to adopt. Gomes v. Campbell, 37 Haw. 252, 257 (Haw. Terr. 1945)(quoting 50 Am. Jur. Statutes, § 337); see also Hawaii Providers Network v. AIG Ins. Co., 105 Hawai'i 362, 370 n.19, 98 P.3d 233, 241 n.19 (2004) ("It is important to note that while arguments predicated upon subsequent legislative actions must be weighed with extreme care, they should not be rejected out of hand as a source that a court may consider in the search for legislative intent.") (citation and internal quotation marks omitted); State v. Dudoit, 90 Hawai'i 262, 268 n.3, 978 P.2d 700, 706 n.3 (1999) ("This court employs subsequent legislative history only to confirm its interpretation of an earlier statutory provision.") (citation and internal quotation marks omitted).

Here, the 2015 legislative action (the introduction but eventual deletion of an amendment to HRS § 844D-35) does not serve to confirm our interpretation of the statute or otherwise provide alternative guidance. In particular, it does not establish an intent under HRS § 844D-35, adopted in 2005, to allow collection of DNA samples from a felon who had been discharged from probation. Importantly, in 2015, the Legislature as a whole did not act with regard to HRS § 844D-35 and there was no legislation adopted related to that provision. See Lockhart v. U.S., 546 U.S. 142, 147 (2005)("[F]ailed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute.")(citations and internal quotation marks omitted); People v. Mendoza, 4 P.3d 265, 284 (Cal. 2000)("We can rarely determine from the failure of the

20

Legislature to pass a particular bill what the intent of the Legislature is with respect to existing law.")(citation and footnote omitted). Additionally, even if we consider the 2015 legislative activity related to HRS § 844D-35, there is no clear intent as to existing law. It is possible that the 2015 proposed amendments to HRS § 844D-35 were an effort to address perceived ambiguities in the statute. Nonetheless, the brief statement in the Committee report that clarification of HRS § 844D-35 is "not necessary" does not show that the existing statute should be read in the manner urged by the State.

We conclude that the 2015 proposed amendments to HRS § 844D-35 do not assist in interpreting the existing statute in this case.

### 6. Summary

Having considered the language of HRS § 844D-35, its title, the other provisions within HRS Chapter 844D Part III in context, the relevant legislative history for HRS Chapter 844D Part III, and the 2015 proposed legislative amendments to HRS § 844D-35, we conclude that the circuit court properly dismissed the charge in this case. HRS § 844D-35 did not provide for the collection of Dunbar's buccal swab sample after he was discharged from probation for his 2005 felony offense. Although the statute may be ambiguous as to subsections (a)(1) and (a)(2), our foremost obligation is "to ascertain and give effect to the intention of the legislature." Kelekolio, 94 Hawaiʻi at 356, 14 P.3d at 366 (citation omitted). Considering all of the factors for interpreting HRS § 844D-35, including first and foremost the language of the statute, the circuit court properly determined the legislative intent was to set forth the process and circumstances for the collection of DNA samples, and that this process did not include collection of Dunbar's buccal swab sample under the circumstances of this case.

### C.   Dunbar's Fourth Amendment Argument

In his Answering Brief, Dunbar contends that if HRS § 844D-35 is interpreted to apply to him even after he had completed his probation, the collection of his DNA sample would be a violation of his Fourth Amendment rights protecting him from unreasonable searches and seizures. Given our ruling above, we do not reach this issue.

### IV.   Conclusion

Based on the foregoing, we affirm the Circuit Court of the Second Circuit's dismissal of the charge against Dunbar in this case.

On the briefs:

Richard K. Minatoya,
Deputy Prosecuting Attorney,
for Plaintiff-Appellant.

John P. Dunbar, Jr.,
Defendant-Appellee, pro se.